# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
January 4, 2001 Session

## JEHIEL FIELDS  v.  STATE OF TENNESSEE

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Bradley County**
**No. 98-069     Hon. R. Steven Bebb, Judge**

---

**No. E1999-00915-SC-R11-PC - Filed February 20, 2001**

---

The sole issue in this appeal is whether our decision in State v. Burns, 6 S.W.3d 453 (Tenn. 1999), changed the standard by which appellate courts review denials of post-conviction relief based on allegations of ineffective assistance of counsel. The Court of Criminal Appeals in this case affirmed the denial of the appellant's post-conviction petition, although it expressed concern that this Court inadvertently changed the standard of appellate review in Burns to require a *de novo* review of a trial court's factual findings regarding claims of ineffective assistance of counsel. While we reaffirm that such claims are mixed questions of law and fact subject to *de novo* review, we emphasize that Burns did not change the standard of review in this context. Consistent with the Rules of Appellate Procedure, our language in Burns meant only that a trial court's findings of fact be reviewed *de novo*, with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. A trial court's conclusions of law are also reviewed under a *de novo* standard, although the trial court's legal conclusions are accorded no deference or presumption of correctness on appeal. Because the Court of Criminal Appeals correctly applied the appropriate standard of review in this case, the judgment of that court is affirmed, and the appellant's petition for post-conviction relief is dismissed.

**Tenn. R. App. P. 11 Application for Permission to Appeal; Judgment of the Court of Criminal Appeals Affirmed; Petition for Post-Conviction Relief Dismissed**

WILLIAM M. BARKER, J., delivered the opinion of the court, in which E. RILEY ANDERSON, C.J., and FRANK F. DROWOTA, III, ADOLPHO A. BIRCH, JR., and JANICE M. HOLDER, JJ., joined.

James F. Logan, Jr., Cleveland, Tennessee, for the appellant, Jehiel Fields.

Paul G. Summers, Attorney General and Reporter; Michael E. Moore, Solicitor General; Elizabeth B. Marney, Assistant Attorney General, Nashville, Tennessee, for the appellee, State of Tennessee.

**OPINION**

**BACKGROUND**

The facts originally giving rise to this case occurred on October 22, 1994, when the appellant, Mr. Jehiel Fields, shot and killed Ms. Odessa Rouser. Earlier that afternoon, Ms. Rouser approached the appellant and offered to trade a marijuana cigarette and ten dollars for a rock of crack cocaine. The appellant agreed, but upon later discovering that the cigarette had been laced with PCP, he became angry and confronted Ms. Rouser at her house. During this confrontation, the appellant apparently assaulted Ms. Rouser, and in response, she stabbed him with a knitting needle. Although the appellant left Ms. Rouser's house after his stabbing, he attended a party later that evening at a nearby house in the same neighborhood. Sometime during this party, the appellant returned to Ms. Rouser's house, kicked open her front door, and shot her three times with a Raven .25 caliber semi-automatic pistol.

During his trial in September of the following year, the State presented testimony from Travis Ware, an acquaintance of the defendant, who testified that he accompanied the appellant from the party to Ms. Rouser's house and saw the appellant kick open her door. Ware also testified that he heard three gunshots and saw Ms. Rouser's husband attempting to pull the appellant back inside the house as the appellant tried to leave through a window. Apart from also introducing physical evidence that the appellant had been in Ms. Rouser's house, the State introduced the testimony of a neighbor who identified the defendant as the person she saw running from Ms. Rouser's house after she heard several shots fired. The State also called a police officer who testified that he saw the defendant earlier that evening wearing a hat similar to one found lying near Ms. Rouser's body.

The appellant defended on the basis that he was not the person responsible for Ms. Rouser's death, but that Travis Ware was the actual perpetrator of the crime. The appellant's counsel argued that Ware's testimony identifying the appellant as the perpetrator was not credible given his previous criminal convictions, his inconsistent statements to the police, and his acceptance of a lesser charge in a plea with the State.[1] The appellant also argued that Ware was the responsible party because he was able to lead the police to other evidence, including the murder weapon, that was later used to convict the appellant. Despite possessing some evidence that the appellant was angry and not acting rationally that evening, the appellant's counsel did not pursue any other defenses, such as one based upon diminished capacity.

On September 6, 1995, the jury found the appellant guilty of first degree murder and especially aggravated burglary, and the court sentenced the appellant to serve an effective life sentence in the Department of Correction. On appeal, the Court of Criminal Appeals affirmed the

---

[1] As Ware's testimony during the appellant's preliminary examination demonstrates, the State originally considered charging Ware as an accessory to Ms. Rouser's murder. Ware later testified, however, that he pleaded guilty to two counts of possession of crack cocaine with the intent to sell and that he received two six-year sentences, which were suspended after six months. The inference drawn by appellant's counsel was that Ware agreed to a lesser charge in exchange for his testimony against the defendant.

appellee's conviction and sentence for first degree murder, although the court reduced the conviction for especially aggravated burglary to aggravated burglary. The appellant did not file an application with this Court requesting permission to appeal.

On March 6, 1998, the appellant filed a *pro se* petition for post-conviction relief, alleging, among other things, that trial counsel rendered ineffective assistance by not presenting the defenses of diminished capacity or self defense. According to the appellant, the State's case as to the identity of the perpetrator was very strong, and as such, counsel should have pursued other defenses. The trial court appointed counsel for the appellant and held a hearing on the petition on March 25, 1999, at which the appellant and his original trial counsel testified.

Trial counsel testified that he had discussed the possibility of a diminished capacity defense with the appellant before his trial, but he decided against pursuing this defense because he had no physical evidence of drug intoxication, and, most importantly, because the defense was inconsistent with the appellant's repeated assertions that he did not commit the crime. According to counsel's testimony,

> Mr. Fields said that he didn't shoot this woman, and so I approached it from the standpoint that Mr. Fields didn't shoot this woman, that there were a lot of other people with [the] opportunity to have done this, that there were a lot of other people in the area, there was other proof that could at least cast suspicion on Travis Ware, if not maybe one other person. . . . [S]o there was at least the ability to point the finger at one or two other people, and that's the way we approached it. . . . [H]e said, "I didn't do this, I didn't do this shooting." We approached it from the standpoint of he didn't do this, he didn't do the shooting.

While counsel further stated that "Mr. Fields has never to this date said that he did this shooting," he admitted on re-direct examination, "I mean my impression was that he just didn't do it, and I'm not exactly sure what he said at different times, but . . . that's certainly possible [that he said he didn't know what happened], that's certainly possible."[2] During his own direct examination, the appellant denied ever having told his attorney anything other than he simply did not know what happened the night of the murder. Moreover, he specifically denied telling his attorney that he did not commit the crime or that his attorney discussed with him the possibility of presenting a diminished capacity defense.

After hearing the evidence, the trial court ruled from the bench denying relief to the appellant. The court stated that "what we have here in my opinion is like Monday morning quarterbacking of a trial strategy. I feel like based on the circumstances and having heard the trial that [trial counsel] made decisions, after consulting with his client, that all went to trial strategy." The appellant

---

[2] Counsel also stated that a defense based on a theory of self defense was, in his opinion, a poor strategy. Counsel was of this belief because the evidence indicated that the appellant was the aggressor at the time of the shooting, and because the appellant's stabbing "took place the previous time when [the appellant] was in the home."

appealed to the Court of Criminal Appeals, which affirmed the trial court's denial of post-conviction relief. After reviewing the testimony and the record, the intermediate court expressed its concern that our decision in State v. Burns, 6 S.W.3d 453 (Tenn. 1999), inadvertently changed the standard for reviewing denials of ineffective assistance of counsel claims by requiring a *de novo* review of the trial court's factual findings. Nevertheless, the court concluded that any such change in the standard of review did not affect its analysis, as "both standards yield the same result in this case." The intermediate court then affirmed the dismissal of the appellant's petition by stating that

> [t]he petitioner presented some evidence at the evidentiary hearing that might arguably support his contention of intoxication at the time of the offense, specifically Mr. Ware's preliminary hearing testimony and the trial attorney's testimony regarding people he interviewed who had seen the petitioner on the night of the offense. However, Mr. Ware was not present to explain in greater detail his preliminary hearing testimony, nor did the petitioner present any of the witnesses his trial attorney interviewed to explain in what manner and to what degree the petitioner was acting angry or irrational. In the absence of more compelling evidence, the petitioner has simply failed to prove by clear and convincing evidence that his attorney's failure to pursue intoxication or diminished capacity as defenses resulted in prejudice.

The appellant then requested permission to appeal to this Court, which we granted on the sole issue of determining the proper standard of appellate review, after our decision in State v. Burns, for denials of post-conviction claims alleging ineffective assistance of counsel. For the reasons given herein, we hold that the standard of appellate review traditionally applied to these post-conviction appeals was not changed by our decision in Burns, although we take this opportunity to further clarify the reasoning of that decision. We also affirm the judgment of the Court of Criminal Appeals, which, despite its concern as to the proper scope of its review, correctly applied the appropriate standard in this case.

## STANDARD OF APPELLATE REVIEW

Recently in State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999), this Court stated that "[w]e have determined that the issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact, as is the propriety of charging lesser-included offenses; thus, our review of this case is de novo." This statement has been the source of some concern among several panels of the Court of Criminal Appeals, and in its opinion in this case, the intermediate court reiterated its belief that we may have changed the standard of review traditionally applicable to post-conviction claims involving allegations of ineffective assistance of counsel. Although we disagree, respectfully, that any substantive change in the standard of appellate review in this regard can or should be properly inferred by our statements in Burns, we acknowledge that our language in this regard could be clarified.

The standard of appellate review applied to ineffective assistance claims has always been that a trial court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997); Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Under this standard, appellate courts do not reweigh or re-evaluate the evidence or substitute their own inferences for those drawn by the trial court. Henley, 960 S.W.2d at 579. Furthermore, questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge. Id.

Although the decisions of the appellate courts in this state have yet to expressly recognize the fact, this standard for reviewing the factual findings of a trial court has always been in accordance with the requirements of the Tennessee Rules of Appellate Procedure. While previous cases have not addressed the standard of review in post-conviction cases specifically in terms of the Rules, it is clear that (1) the Rules of Appellate Procedure govern appeals in post-conviction cases, see Tenn. R. Sup. Ct. 28, § 10(A) ("An appeal from the dismissal or denial of a post-conviction petition shall be in accordance with the Tennessee Rules of Appellate Procedure.")[3]; and (2) that appellate courts are not at liberty to apply standards that are inconsistent with those found in the Rules of Appellate Procedure. See Tenn. Code Ann. §§ 16-3-402, -406; see also Tenn. R. App. P. 1 advisory commission comments ("By the terms of the statute, after the rules have taken effect, all laws in conflict therewith are of no further force and effect.").

Consistent with our statement in Burns, Rule of Appellate Procedure 13(d) requires a *de novo* review of a trial court's factual findings. In conducting this *de novo* review, however, appellate courts are to accord those factual findings a presumption of correctness, which is overcome only when the preponderance of the evidence is contrary to the trial court's findings of fact.[4] This standard is identical to that previously recognized in Henley and in other cases, which required deference to the trial court's findings of fact "unless the evidence in the record preponderates against those findings." Henley, 960 S.W.2d at 578. When we stated in Burns that the standard of review in cases involving claims of ineffective assistance of counsel were to be reviewed under a *de novo*

---

[3] See also Tenn. Code Ann. § 40-30-216 (1998); Tenn. R. App. P. 1 advisory commission comments (stating that the Rules apply "in all proceedings, whether denominated as appeals or otherwise, in both civil and criminal cases").

[4] Admittedly, Rule 13(d) speaks only of the review of factual findings in *civil* cases, and as we have previously recognized, post-conviction proceedings can be deemed to be "criminal" proceedings for some purposes and "civil" proceedings for others. For example, in State v. Scales, 767 S.W.2d 157, 158 (Tenn. 1989), we held that post-conviction proceedings were "criminal" in nature when the issue involved Rule of Appellate Procedure 4. However, in Watkins v. State, 903 S.W.2d 302, 305 (Tenn. 1995), we held that "[f]or the procedural purposes relevant to [tolling the statute of limitations under the 1986 act], a post-conviction petition should be considered civil in nature."

The question in this case, however, is not as fundamental as whether post-conviction proceedings are essentially civil or criminal in nature. Rather, the question of review is really one of practicality. When an appellate court reviews factual findings in a post-conviction proceeding, it is not reviewing a determination of guilt as contemplated by Rule 13(e). Rather, a trial court's factual findings in the post-conviction context are more closely analogous to those findings made by judges in other civil disputes. As such, Rule 13(d) seems to be the most appropriate provision within the Rules of Appellate Procedure for reviewing the trial court's factual findings in the post-conviction context.

standard, we meant only that review was *de novo* according to the standards set forth in the Rules of Appellate Procedure. Clearly, this Court could not have disregarded the Rules so as to conduct review under a different and inconsistent standard. See Tenn. R. Sup. Ct. 1 ("The Tennessee Rules of Appellate Procedure, which became effective on July 1, 1979, shall govern all matters on appeal before this Court. All rules of this Court in conflict with or modified by the Tennessee Rules of Appellate Procedure are hereby superseded and modified by the Tennessee Rules of Appellate Procedure.").

Although our discussion in Burns of the standard of review could have been perhaps more elucidative, this Court certainly intended no departure from the standard as followed in all of our previously issued decisions. While we did not specifically state in Burns that the trial court's findings of fact are entitled to a presumption of correctness, we did not expressly omit the presumption as would have been expected or as we have done in other cases. See, e.g., State v. Binette, 33 S.W.3d 215, 217 (Tenn. 2000) ("Accordingly, we hold that when a trial court's findings of fact at a suppression hearing are based on evidence that does not involve issues of credibility, a reviewing court must examine the record de novo without a presumption of correctness.").[5] As such, our language in Burns should not be read as eliminating the presumption of correctness accorded a trial court's factual findings as required by the Rules of Appellate Procedure.

In reviewing the application of law to those factual findings to determine whether counsel's performance was deficient or whether the defendant was prejudiced by that deficiency, appellate courts should conduct a purely *de novo* review, according the trial court's conclusions of law no deference or presumption of correctness. This standard has been universally applied to issues involving only questions of law, see State v. England, 19 S.W.3d 762, 766 (Tenn. 2000) ("The application of the law to the facts found by the trial court, however, is a question of law which this Court reviews de novo."); State v. Yeargan, 958 S.W.2d 626, 629 (Tenn. 1997); Hawks v. City of Westmoreland, 960 S.W.2d 10, 15 (Tenn. 1997) ("We review questions of law de novo with no

---

[5] This is not to say, however, that an appellate court could never review the facts in the record under a purely *de novo* review without according any deference to the trial court. As we stated in Ganzevoort v. Russell, 949 S.W.2d 293, 296 (Tenn. 1997), "[w]hen the trial judge has failed to make specific findings of fact, this Court will review the record [on its own] to determine the preponderance of the evidence. See also Realty Shop, Inc. v. RR Westminster Holding, Inc., 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999) ("[I]f the trial judge has not made a specific finding of fact on a particular matter, we review the record to determine where the preponderance of the evidence lies without employing a presumption of correctness.").

Outside of this context, though, appellate courts may review a trial court's factual findings according to a purely *de novo* standard only in very limited circumstances. See Binette, 33 S.W.3d at 217 (reviewing findings of fact at a suppression hearing under a purely *de novo* standard when the only evidence considered by the trial court was that of a videotape); Landers v. Fireman's Fund Ins. Co., 775 S.W.2d 355, 356 (Tenn. 1989) (reviewing findings of fact in workers' compensation cases under a purely *de novo* review when "[a]ll of the medical proof was taken by deposition or was documentary, so that all impressions of weight and credibility must be drawn from the contents thereof, and not from the appearance of witnesses on oral testimony at trial"). Because none of these special circumstances are typically present in a claim of ineffective assistance of counsel, this Court could rarely, if ever, conduct a purely *de novo* review of a trial court's factual findings in this context.

presumption of correctness."), and no change from this familiar standard was intended by our language in <u>Burns</u>.

Accordingly, to clarify our language in <u>State v. Burns</u>, we reaffirm our statement that a trial court's conclusion as to whether a petitioner has been denied the effective assistance of counsel is an issue that presents a mixed question of law and fact on appeal. We also reaffirm that this issue is one that is reviewed under a *de novo* standard of review, consistent with the standards set forth in the Rules of Appellate Procedure. As such, a trial court's *findings of fact* underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. <u>See</u> Tenn. R. App. P. 13(d); <u>Henley v. State</u>, 960 S.W.2d 572, 578 (Tenn.1997). However, a trial court's *conclusions of law*—such as whether counsel's performance was deficient or whether that deficiency was prejudicial—are reviewed under a purely *de novo* standard, with no presumption of correctness given to the trial court's conclusions. Finally, we emphasize that our decision in <u>Burns</u>, with its implicit reliance on the Rules of Appellate Procedure, signaled no departure from the traditional standards of review governing post-conviction claims of ineffective assistance of counsel.

In reviewing the opinion of the Court of Criminal Appeals, we find that the intermediate court applied the correct standard of review in this case. The intermediate court gave appropriate deference to the factual findings of the trial court, and it made its own determinations as to the application of the law to those facts. The appellant does correctly note, however, that the intermediate court improperly stated that the "petitioner must show both deficiency and prejudice by clear and convincing evidence," instead of more accurately stating that the petitioner has "the burden of proving *the allegations of fact* by clear and convincing evidence." <u>See</u> Tenn. Code Ann. § 40-30-210(f). Nevertheless, this error by the Court of Criminal Appeals appears to be only one of imprecision in the use of its language, as it is clear from its opinion that the court applied the correct legal standard and properly concluded that the appellant's claim was without merit.[6]

Accordingly, we affirm the judgment of the Court of Criminal Appeals and dismiss the appellant's petition for post-conviction relief. Costs of this appeal shall be assessed to the appellant, Jehiel Fields, for which execution shall issue if necessary.

---

[6] For example, the intermediate court correctly stated earlier in its opinion that the burden of proving prejudice from counsel's deficiency was only "a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair." From our own review of the record, we find that the trial court's implicit findings of fact—that the appellant consistently denied committing the murder and that trial counsel discussed a diminished capacity defense with the appellant—are supported by the weight of the evidence. Based on these facts, we conclude that counsel's performance in choosing the identity defense was not deficient as a matter of law, and we agree with the Court of Criminal Appeals that the appellant failed to show a reasonable probability that an alternative defense would have led to a different result at trial.

_____
WILLIAM M. BARKER, JUSTICE