IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 28, 2001

## BARRY DUNHAM v. STATE OF TENNESSEE

**Appeal as of Right from the Criminal Court for Macon County**
**No. 99-270     J. O. Bond, Judge**

---

**No. M2000-02557-CCA-R3-PC - Filed February 11, 2002**

---

On October 5, 1998, the defendant, Barry Dunham, pled guilty in the Macon County Criminal Court to one count of second degree murder and received a sentence of twenty-five years incarceration in the Tennessee Department of Correction. The defendant filed for post-conviction relief which was granted by the post-conviction court. The State now appeals. Upon review of the record and the parties' briefs, we affirm the judgment of the post-conviction court and remand for new trial.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed and Remanded.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Tom P. Thompson, Jr., District Attorney General; Guy Yelton and Robert N. Hibbett, Assistant District Attorneys General, for the appellant, State of Tennessee.

E. Guy Holliman, LaFayette, Tennessee, for the appellee, Barry Dunham.

### OPINION

### I. Factual Background

The defendant was indicted for the first degree murder of his father. Subsequently, on October 5, 1998, the State entered into a plea agreement with the defendant in which he pled guilty to second degree murder in exchange for a sentence of twenty-five years incarceration. The original judgment of conviction erroneously reflected that the defendant was sentenced as a standard Range I offender instead of as a violent offender. On November 2, 1998, the trial court entered an amended judgment reflecting, under the "Special Conditions" portion of the judgment form, that the defendant was "to serve pursuant to TCA-min[imum] sent[ence] for viol[ent] crime of 85% before becoming eligible for parol[e]."

On October 22, 1999, the defendant filed a petition for post-conviction relief, alleging that his guilty plea was neither voluntary nor knowing and that he received the ineffective assistance of counsel. The post-conviction court appointed counsel who subsequently filed an amended petition that also alleged the defendant was subjected to an illegal sentence.

On September 8, 2000, the post-conviction court held a hearing on the defendant's claims. Without hearing testimony,[1] the court determined that the defendant was subject to an illegal sentence, noting that the defendant should have been sentenced as a violent offender to serve one hundred percent (100%) of his sentence before becoming eligible for parole. Specifically, the post-conviction court stated

> Well, it's obvious we screwed up. I mean, we have to put it where it is. It should have said a hundred percent, we should have said a hundred percent. Although we all know that we're talking about 85 percent. That's where we fall into these traps, that's when they let them out is 85 percent, unless they've done something really bad in prison. But it's really a hundred percent. It is an illegal plea.

The State now appeals this decision.

## II. Analysis

It is well established that, before receiving post-conviction relief, a defendant must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f) (1997); see also Hicks v. State, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998) ("Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence."). Generally, the post-conviction court will determine witness credibility as well as the weight and value to be accorded their testimony. Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). Such factual findings will be reviewed de novo with a presumption of correctness. Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, we will review the post-conviction court's conclusions of law purely de novo. Id.

The defendant initially argues that, since the State did not object to the post-conviction court's ruling, it should be precluded from challenging the ruling on appeal. After the post-conviction court ruled, the following conversation took place:

> State: The State will be ready to try [the defendant] for first degree murder. And I think the fact that he now comes and tries to take advantage of--
>
> The Court: Right. He doesn't get any benefit. It's first degree murder, that's what the charge is.

---

[1] The post-conviction ruled after reviewing the transcript of the defendant's guilty plea hearing and the judgment of conviction.

State: That suits us fine.

The defendant cites Bearman v. Camatsos, 385 S.W.2d 91, 93 (Tenn. 1964), for the proposition that the State may not appeal the post-conviction court's ruling because it failed to object to the ruling in the court below. However, Bearman deals with factual stipulations by parties at trial. Id.; see also State v. Kirk, 613 S.W.2d 485, 486 (Tenn. Crim. App. 1980); State v. Keith A. Richards, No. 02C01-9202-CR-00027, 1992 WL 163414, at *2 (Tenn. Crim. App. at Jackson, July 15, 1992); State v. Justin D. Lovell, No. 88-270-III, 1989 WL 95642, at *3 (Tenn. Crim. App. at Nashville, August 22, 1989). The comments by the State in this case were simply made in response to the post-conviction court's observation that the charge against the defendant upon retrial would be first degree murder. We conclude that, given the facts before us, the State is not precluded from appealing the post-conviction court's decision. Nevertheless, we find no error in the ruling of the post-conviction court.

The defendant pled guilty to second degree murder. See Tenn. Code Ann. § 39-13-210 (1997). The Tennessee Criminal Sentencing Reform Act of 1989 specifically provides:

> (i)(1) There shall be no release eligibility for a person committing an offense, on or after July 1, 1995, that is enumerated in subdivision (2). Such person shall serve one hundred percent (100%) of the sentence imposed by the court less sentence credits earned and retained. However, no sentence reduction credits authorized . . . shall operate to reduce the sentence imposed by the court by more than fifteen percent (15%).
>
> (2) The offenses to which the provisions of subdivision (1) apply are:
> . . .
> (B) *Murder in the second degree. . . .*

Tenn. Code Ann. § 40-35-501(i)(1) and (2) (2001 Supp.) (emphasis added). However, as we earlier noted, the trial court sentenced the defendant to serve eighty-five percent (85%) of his sentence before becoming eligible for parole, in contravention of Tenn. Code Ann. § 40-35-501(i)(1) and (2), which statute mandates that one hundred percent (100%) of the sentence imposed for second degree murder be served in confinement. See State v. Burkhart, 566 S.W.2d 871, 873 (Tenn. 1978); State v. Howard Buchanan, No. M2000-00878-CCA-R3-CD, 2001 WL 261544, at *5 (Tenn. Crim. App. at Nashville, March 16, 2001), perm. to appeal denied, (Tenn. 2001); Michael Wade Smith v. State, No. W1999-01817-CCA-R3-PC, 2000 WL 1664262, at *3 (Tenn. Crim. App. at Jackson, October 23, 2000). "A sentence imposed in direct contravention of a statute is . . . illegal." Smith, No. W1999-01817-CCA-R3-PC, 2000 WL 1664262, at *3. Our supreme court observed in Burkhart, 566 S.W.2d at 873, that, "[a]s a general rule, a trial judge may correct an illegal, as opposed to a merely erroneous, sentence at any time, even if it has become final." However, the determination that the defendant's sentence is illegal does not dispose of this case. The defendant was unaware that the agreed sentence was illegal and, therefore, could not have knowingly and voluntarily pled guilty, nor can the judgment now be corrected without the defendant's knowing and voluntary consent. See Woods v. State, 928 S.W.2d 52, 55 (Tenn. Crim. App. 1996).

As noted by the post-conviction court, the defendant entered his guilty plea after being erroneously advised at the guilty plea hearing by the trial court and by the State that he would be eligible for release after serving eighty-five percent (85%) of his sentence. The post-conviction court correctly concluded that the record contained enough information to question whether the petitioner understood the ramifications of his guilty plea. We cannot conclude that a defendant who was so clearly misinformed regarding the implications of his plea agreement entered such plea knowingly and voluntarily. Accordingly, we agree with the post-conviction court that the defendant is entitled to relief.

### III. Conclusion

Finding no reversible error, we affirm the judgment of the post-conviction court and remand for new trial.

_____
NORMA McGEE OGLE, JUDGE