# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs January 25, 2005

## RYAN JAMES MORAN v. STATE OF TENNESSEE

### Direct Appeal from the Circuit Court for Giles County
### No. 11369    Robert Holloway, Judge

_____

### No. M2004-01084-CCA-R3-PC - Filed March 29, 2005

_____

The Petitioner, Ryan James Moran, pled guilty to multiple offenses that occurred in 1995, and the trial court sentenced him to an effective sentence of seventy-five years in prison. The Petitioner filed a pro se petition for post-conviction relief, which the post-conviction court summarily dismissed because it was barred by the statute of limitations. The Petitioner appeals, contending that the post-conviction court erred. Finding no reversible error, we affirm the post-conviction court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which DAVID H. WELLES and JERRY L. SMITH, JJ., joined.

Ryan James Moran, pro se.

Paul G. Summers, Attorney General and Reporter; Michael Markham, Assistant Attorney General; T. Michael Bottoms, District Attorney General; and Patrick Butler, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION
### I. Facts

On February 12, 1996, the Petitioner pled guilty to especially aggravated kidnapping, especially aggravated robbery, attempted first degree murder, and assault. On direct appeal, the Petitioner challenged his sentence and this Court recited the facts as follows:

> The victim, Jimmy R. Taylor, took his new Jeep Grand Cherokee to a carwash in Giles County around lunchtime on April 5, 1995. Taylor, an electrical supply salesman, was in between appointments. After washing his vehicle and returning to his car, the defendant approached the victim, cocked a sawed-off shotgun, and placed it to the victim's throat. The defendant told the victim "if [he] moved [the

defendant would] blow [his] m----- f----' head off." The defendant told the victim, who was seated in the driver's seat, to move over to the passenger seat.

The defendant then drove the Jeep from the carwash and headed to Lawrenceburg on Highway 64. The defendant held the gun at the victim's side the entire time. The victim was instructed not to look scared and to look straight ahead. The victim said if he even glanced toward the defendant, the defendant would poke him with the gun.

During the ride the defendant asked the victim for his money. Taylor gave the defendant six dollars. When they approached Chicken Creek Road, the defendant told the victim he was going to release him. The defendant stopped the vehicle, and the victim reached for the door handle to exit the vehicle. The defendant said, "I didn't say now. I'll tell you when I'm going to let you go." The defendant then poked him with the gun in the ribs four times. The defendant turned the vehicle around, crossed an overpass, then stopped, backed up, and drove off the road. He stopped at an area called Richland Creek, which is below the overpass.

The victim thanked the defendant for letting him go and, as he turned to exit the vehicle, the defendant put the gun to the victim's head and fired. The victim said he remembered a loud ringing in his head, falling to the ground face down, and losing consciousness. The defendant eventually "totaled" the victim's vehicle.

When the victim regained consciousness, he discovered he could not move and the ringing persisted. Finally he was able to roll over. "I rolled over enough to--in front of me I seen a pile of blood, tissue and hair. It was right beside of my head so I figured at that point the back of my head was kind of laying beside me." He tried to scream for help but realized the motorists on the overpass could not hear him. He placed his wallet in his shirt pocket so he could be identified if he lost consciousness again.

The victim saw houses, but they were too far away. He decided to crawl to the roadway above him. He crawled on his stomach. He did not know how far it was or how long it took, but said "it was a long ways that day." He stumbled onto the road. Two cars stopped. One of the motorists called for an ambulance while one sat and prayed with the victim. A third person wrapped the victim in a sheet until help arrived.

The victim's treating doctor noted that the victim was shot in a remote area and was fortunate to get himself to the road, stating "[o]therwise, I do not think he would have survived this event."

State v. Ryan Moran, No. 01-C-01-9608-CC00346, 1997 WL 742520, at *2 (Tenn. Crim. App., at Nashville, Dec. 1, 1997), *no perm. app. filed*. After reviewing the law and applicable authorities, this Court affirmed the Defendant's sentence.

On February 1, 2004, the Petitioner filed a writ of error coram nobis, alleging ineffective assistance of counsel and requesting a new sentencing hearing. On February 23, 2004, the Petitioner filed a petition for post-conviction relief in which he alleged:

(1) that his sentence amounted to cruel and unusual punishment;
(2) that his plea was "for thirty years at thirty percent," and the trial court improperly rejected the plea and sentenced him to seventy-five years;
(3) that the trial judge sentenced him to an excessive sentence
(4) that the trial judge improperly ordered that his sentences run consecutively;
(5) that the trial judge committed misconduct when it rejected the plea agreement and continued with sentencing;
(6) that his trial attorney was ineffective for not appealing "this issue";
(7) that the statute of limitations in Tennessee Code Annotated section 40-30-102 should be tolled in accordance with State v. Burford, 845 S.W.2d 204 (Tenn. 1992).

On February 25, 2004, the post-conviction court summarily dismissed the Petitioner's petition, finding that it was barred by the statute of limitations. The post-conviction court found that the final judgment in the Petitioner's case was entered on February 12, 1996, and the post-conviction petition was not filed until February 23, 2004. On May 5, 2004, the trial court dismissed the Petition of writ of error coram nobis. In this appeal, the Petitioner appeals only the post-conviction court's dismissal of his petition for post-conviction relief.

## II. Analysis

The Petitioner now appeals, contending that the post-conviction court erred in summarily dismissing the petition for post-conviction relief. We disagree and affirm the post-conviction court's order.

In order to obtain post-conviction relief, a petitioner must show that his or her conviction or sentence is void or voidable because of the abridgment of a constitutional right. Tenn. Code Ann. § 40-30-103 (2003). The petitioner bears the burden of proving factual allegations in the petition for post-conviction relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). A post-conviction court's factual findings are subject to a de novo review by this Court; however, we must accord these factual findings a presumption of correctness, which is overcome only when a preponderance of the evidence is contrary to the post-conviction court's factual findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). A post-conviction court's conclusions of law are subject to a purely de novo review by this Court, with no presumption of correctness. Id. at 457.

3

Tennessee Code Annotated section 40-30-102(a) promulgates the statute of limitations for a petitioner for post-conviction relief:

> [A] person in custody under a sentence of a court of this state must petition for post-conviction relief under this part within one (1) year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one (1) year of the date on which the judgment became final, or consideration of such petition shall be barred. The statute of limitations shall not be tolled for any reason, including any tolling or saving provision otherwise available at law or equity. Time is of the essence of the right to file a petition for post-conviction relief or motion to reopen established by this chapter, and the one-year limitations period is an element of the right to file such an action and is a condition upon its exercise. Except as specifically provided in subsections (b) and (c), the right to file a petition for post-conviction relief or a motion to reopen under this chapter shall be extinguished upon the expiration of the limitations period.

Tenn. Code Ann. § 40-30-102(a) (2003). The Post-Conviction Procedure Act permits the extension of the one-year statute of limitations period for: (1) claims based on a final appellate court ruling establishing a constitutional right not recognized at the time of trial, but given retroactive effect by the appellate court; (2) claims based upon new scientific evidence establishing that the petitioner is actually innocent; and (3) claims seeking relief from an enhanced sentence that was based upon convictions later determined to be invalid. Tenn. Code Ann. § 40-30-102(b). Additionally, due process requires, in certain circumstances, that the statute of limitation be tolled. See Williams v. State, 44 S.W.3d 464 (Tenn. 2001); Seals v. State, 23 S.W.3d 272 (Tenn. 2000); Burford v. State, 845 S.W.2d 204 (Tenn. 1992).

In the case under submission, the trial court imposed the challenged conviction on February 12, 1996, and this Court affirmed the Defendant's sentence on appeal on December 1, 1997. Therefore, the Defendant was required by statute to file his petition for post-conviction relief within one year of December 1, 1997, but he did not do so until February 23, 2004, almost six years after the filing deadline. We conclude that none of the exceptions to the bar of the statute of limitations apply in the present case. The petition is time barred, and the post-conviction court was correct to rule accordingly. The order of the circuit court is affirmed.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the judgment of post-conviction court.

_____

ROBERT W. WEDEMEYER, JUDGE