# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs April 12, 2011

## BRYANT ADAIR v. STATE OF TENNESSEE

Appeal from the Shelby County Criminal Court
No. 03-01051     W. Otis Higgs, Jr., Judge

---

### No. W2010-01608-CCA-R3-PC - Filed June 30, 2011

---

The Petitioner, Bryant Adair, appeals from the Shelby County Criminal Court's dismissal of his untimely filed petition for post-conviction relief from his convictions for especially aggravated kidnapping and two counts of aggravated robbery and from his effective sentence of thirteen and one-half years. On appeal, the Petitioner contends that principles of due process require the tolling of the applicable statute of limitations. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

Terita M. Hewlett, Memphis, Tennessee, for the appellant, Bryant Adair.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Brian Holmgren, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Petitioner pled guilty on September 13, 2004, and judgments were entered on that date. He filed his post-conviction petition on July 18, 2006. The pro se petition alleged that due process required tolling of the statute of limitations due to the Petitioner's mental incompetence. The trial court appointed counsel, who was later relieved, and other counsel was appointed. The Petitioner's second attorney filed a "Notice That No Amended Petition Will Be Filed." The notice made factual allegations pertinent to the procedural history of the case, restated the basis of the Petitioner's post-conviction claims, and reasserted the

Petitioner's claim of mental incompetence. Trial counsel filed the Petitioner's mental health treatment records for the time period from July 29, 2004, until June 21, 2006, with the notice.

The records filed with the notice reflect the following: During a July 29, 2004 admission to a Middle Tennessee Mental Health Institute, the Petitioner was diagnosed with depressive disorder, malingering, alcohol abuse, cannabis abuse, and cocaine abuse. The discharge summary reported that the Petitioner previously had been evaluated by the Mental Health Cooperative in August 2002 and "was cooperative, charming, and sincere," but that he was referred to the prison hospital for the current evaluation because he "was verbally unresponsive, appeared vacant, [and] was rocking in his chair." The Petitioner professed during his first evaluation in the July 2004 admission not to know his age or date of birth. The next day, the Petitioner responded that he did not know or did not remember the answers to many questions he was asked. He claimed to be sixteen years old but stated that he did not know his date of birth. He claimed not to know his criminal charges or his medications. He reported that he heard voices "since he was little" and that the voices told him to cut himself and to kill himself and others. The Petitioner reported past suicide attempts and stated that he brought razor blades from the jail to the mental health hospital by concealing them in his mouth. He was given Zyprexa and Prolixin but did not respond to the drugs. Psychological tests revealed that the Petitioner was malingering. The attending psychiatrist stated that the Petitioner was "[c]ompetent to stand trial" and "[did] not meet the criteria for [an] insanity defense or committability." He was discharged to the jail with a prescription for Effexor XR and followup by the Mental Health Cooperative was recommended.

The documents attached to the notice filed by trial counsel also included a Department of Correction Mental Health Treatment Plan dated September 23, 2004, which stated the Petitioner's initial diagnoses as paranoid-type schizophrenia and borderline personality. There was a note that depression needed to be ruled out. A psychiatrist and three staff members signed the document.

The record contains other Department of Correction documents detailing the Petitioner's mental health treatment. They list the psychiatric diagnoses of depression, schizophrenia, and borderline personality disorder. They also document that the Petitioner was taking medication and receiving treatment, although they reflect time periods during which the Petitioner refused to take his medication. These records note that the Petitioner reported past suicide attempts and was hospitalized for a suicide attempt in December 2003. The documents do not contain any statements by mental health professionals addressing whether the Petitioner is unable to manage his affairs or to understand his legal rights and liabilities.

Although the State disputed that the petition established a prima facie case for due process tolling, the assistant district attorney agreed in the interest of judicial economy for the trial court to conduct a hearing on the tolling issue but said the State did not waive the question of the sufficiency of the petition. At the hearing, the Petitioner testified that during his examination at a mental health hospital in 2003, he was diagnosed with "bipolar, manic depressive, with paranoid schizophrenia." He said, "They took me down to the little courtroom inside that place and they declared me, that's what they told me that I was declared as." He also stated that his mother "was pronounced by [sic] over-seer of [his] affairs" when he was at this psychiatric hospital and that this arrangement was still in place. He said that since his incarceration following his guilty plea in the present case, his family helped him by sending money to his prison account, assisting in obtaining items he needed in prison, and assisting in choosing a lawyer to pursue an unidentified issue related to a disability from "cellulites [sic] in my leg." He said other inmates helped him to make decisions and talked to him when his psychiatrist would not. He said that other inmates who were of the same religion supported his religious studies and helped to "guide" him on the "right path" and to stay out of trouble.

The trial court found that the Petitioner failed to establish that due process required tolling of the statute of limitations based upon the Petitioner's alleged mental incompetency. The trial court dismissed the petition. This appeal followed.

A petition for post-conviction relief must be filed within one year of the final action by the highest state appellate court to which an appeal is made or within one year of the trial court's judgment becoming final. T.C.A. § 40-30-102(a) (2006). Tennessee Code Annotated provides for tolling of the post-conviction statute of limitations in three instances not applicable to this appeal. See id. at (b)(1)-(3). In addition, principles of due process may allow tolling of the statute of limitations in limited circumstances. See Burford v. State, 845 S.W.2d 204, 208 (Tenn. 1992) ("due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner"); see also Seals v. State, 23 S.W.3d 272, 279 (Tenn. 2000) (holding that "a petitioner who is mentally incompetent is denied an opportunity to raise a claim in a meaningful manner unless the statute of limitations is tolled during the period of mental incompetence").

In order to show that due process requires tolling of the post-conviction statute of limitations, the petitioner must make a prima facie showing in the post-conviction petition that he or she is not able to manage personal affairs or understand his or her legal rights or liabilities. State v. Nix, 40 S.W.3d 459, 462-63 (Tenn. 2001). "Unsupported, conclusory, or general allegations of mental illness will not be sufficient to require tolling and prevent summary dismissal under Tenn. Code. Ann. § 40-30-206(b) & (f)." Nix, 40 S.W.3d at 464

(citing statute now renumbered as T.C.A. § 40-30-106(b), (f)). This prima facie showing requires the petitioner to state specific factual allegations regarding his or her inability to manage personal affairs or understand legal rights or liabilities in the petition. Id. The petitioner may satisfy this requirement by attaching to the petition affidavits, depositions, reports, or other credible evidence of his mental condition. Id. It is not essential that the petitioner use materials from mental health professionals, but instead, the petitioner may call upon anyone with knowledge of his mental condition, such as family members or prison officials. Id. "Even if a petitioner satisfies the prima facie showing, at the hearing the petitioner bears the burden of proving by clear and convincing evidence that the statute of limitations should be tolled for incompetence, and that as a result of the tolling, the petition is timely." Id. (citing T.C.A. § 40-30-210(f) (now 40-30-110(f)).

First, we conclude that the mental health records attached to the petition in the present case fail to make a prima facie showing that the Petitioner was unable to manage his personal affairs or understand his legal rights and liabilities during the limitations period. Our supreme court has stated that "mental illness is not the equivalent of mental incompetence." Reid v. State, 197 S.W.3d 694, 702 (Tenn. 2006) (citing Nix, 40 S.W.3d at 463-64). The Petitioner argues that his psychiatric diagnoses and the medications he took resulted in mental incompetency, but nothing in the documents states that the Petitioner was unable to manage his affairs or understand his legal rights and liabilities. Likewise, nothing in the documents suggests such a connection.

We also conclude that at the hearing, the Petitioner failed to show clear and convincing proof of his mental incompetency. The Petitioner testified that his mother "was pronounced by [sic] over-seer of [his] affairs" when he was at the psychiatric hospital in 2003 and that this arrangement was still in place. The Petitioner did not offer documentary proof of a court-ordered conservatorship or appointment of a guardian, nor did he call his mother as a witness to explain her legal responsibilities arising from the Petitioner's alleged incompetence. He also testified that other inmates assisted him with various matters, although he did not call these witnesses at the hearing or offer proof of specific decisions they helped him make in managing his affairs or of their knowledge and observations of his alleged mental incompetency.

In contrast to the Petitioner's testimony that there was a legal proceeding in 2003 in which his mother was declared his conservator or guardian, the Petitioner's mental health treatment records reflect that during an approximate one-month psychiatric evaluation in 2004 at Middle Tennessee Mental Health Institute, the Petitioner's attending psychiatrist reported that the Petitioner was malingering, that he was competent to stand trial, and that he did not meet the criteria for an insanity defense or for being committed to a mental

-4-

hospital.  The Petitioner's guilty plea in this case took place approximately two weeks after his discharge from this evaluation.

Although the trial court did not specifically address the Petitioner's credibility in its order, it ruled that based upon the evidence presented at the hearing, "no exception to [the one-year] statute of limitations has been proven."  Implicit in the court's ruling is its discounting of the Petitioner's testimony.  The evidence in the record does not preponderate against the trial court's determination that the Petitioner's testimony was not sufficient proof to establish his tolling claim.  See Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001) (stating that an appellate court is bound by the trial court's findings of fact unless it concludes that the evidence in the record preponderates against those findings).  Because the Petitioner failed to establish his tolling claim at the hearing, the trial court properly dismissed his petition as untimely.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE