IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 5, 2011

## ANTONIO OLIVER v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 04-08346     Paul Skahan, Judge**

_____

**No. W2009-02113-CCA-R3-PC  - Filed September 23, 2011**

_____

A Shelby County jury convicted the petitioner, Antonio Oliver, of first degree murder, and the trial court sentenced him to life imprisonment. On direct appeal, this court affirmed the petitioner's conviction and sentence. The petitioner filed a petition for post-conviction relief and motion to toll limitations period alleging that he was deprived of second-tier review of his conviction by the Tennessee Supreme Court based on various misrepresentations by appellate counsel. Specifically, the petitioner argues that appellate counsel failed to notify him of this court's opinion on direct appeal, which caused him to be "unaware" that a Rule 11 application needed to be filed or that the statute of limitations for post-conviction relief had expired. The post-conviction court denied relief, and the petitioner now appeals. After reviewing the record, the parties' briefs, and applicable law, we conclude that the petitioner was denied second-tier review of his conviction through no fault of his own. In reversing the judgment of the post-conviction court, we grant the petitioner a delayed appeal and stay further proceedings on his remaining claims of post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ALAN E. GLENN J., joined and J.C. MCLIN, J., (not participating).[1]

Ruchee J. Patel, Memphis, Tennessee, for the Petitioner-Appellant, Antonio Oliver.

_____

[1]This case was originally assigned to our colleague and friend, Judge J.C. McLin. After Judge McLin's untimely death on September 3, 2011, the case was re-assigned. Prior to his death, Judge McLin and his staff had done extensive work on this case. We have utilized much of that work, incorporated it into this opinion, and take this opportunity to acknowledge the faithful service of Judge McLin to this Court.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; William L. Gibbons, District Attorney General; and Bryan Davis, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

In September 2006, a Shelby County jury convicted the petitioner, Antonio Oliver, of first degree murder. The trial court sentenced him to life imprisonment. The petitioner appealed his conviction, which was affirmed by this Court. See State v. Antonio Oliver, No. W2006-01736-CCA-R3-CD, 2007 WL 3194570, at *1 (Tenn. Crim. App., at Jackson, October 30, 2007). No Rule 11 application for permission to appeal to the Tennessee Supreme Court was filed. Over a year after our opinion affirming the petitioner's conviction, on March 12, 2009, the petitioner filed a "Petition for Post-Conviction Relief and Motion to Toll Limitations Period," which requested that the post-conviction court toll the statute of limitations period based on due process and ineffective assistance of counsel.

On March 21, 2009, the post-conviction court held a hearing on the petitioner's motion to toll the statute of limitations period. Appellate counsel, a veteran appellate criminal defense attorney, testified that he represented the petitioner for his motion for new trial and direct appeal. He stated that according to his contract with the petitioner's family, he was to represent the petitioner at the motion for new trial, direct appeal and Rule 11 appeal. He said that he assured the petitioner's family that his firm would "use [their] best professional skills in representing [the petitioner]." Appellate counsel argued the petitioner's motion for new trial and prepared a direct appeal to the Tennessee Court of Criminal Appeals.

Appellate counsel said that his office's normal procedure after an appellate court issued an opinion was to review the opinion, send a copy to the client, add the opinion to the client's file, and prepare a Rule 11 application for permission to appeal to the Tennessee Supreme Court. They would docket the Rule 11 on their office calendar to ensure that the application to appeal would be timely filed. According to appellate counsel, when the opinion for petitioner's direct appeal was issued, the person in the office who had been handling appeals was on maternity leave. The replacement person did not docket the petitioner's case or send the petitioner a copy of the direct appeal opinion. Appellate counsel's office eventually closed the case, and appellate counsel had no knowledge of the appellate decision. Appellate counsel did not become aware of the oversight until the petitioner's family called him to ask about the status of the case. Appellate counsel said that he told the petitioner what had happened and "prepared something for him as quickly as possible so that it would . . . meet muster to at least get him a hearing."

Appellate counsel "absolutely" considered the failure to send the petitioner a copy of the opinion a mistake. He said that the firm's customary practice was to send clients their opinions. Appellate counsel understood his duty to have reasonable communication with his client. He said that he did not file a motion to withdraw because he did not intend to withdraw from the case. Appellate counsel still considered himself the petitioner's attorney but did not recall whether he represented to the petitioner that he was pursuing all further matters. He said that, generally, he did not communicate with clients during their appeals because they are incarcerated in other jurisdictions. Appellate counsel agreed that the failure to inform the petitioner about the opinion "seriously affected [the petitioner's] rights for all subsequent filings." He stated that he did not intend to let the petitioner's opinion "slip through the cracks" and that the petitioner and the petitioner's family believed that trial counsel continued to undertake the appeal and that the appeal was ongoing. Appellate counsel did not remember specific conversations with the petitioner or his family during the appeals process, but he said that their contract "contemplate[d] specifically, expressly, that this matter would go through the Supreme Court with the Rule 11."

On cross-examination, appellate counsel testified that he did not purposely fail to send the petitioner the appellate opinion, and his failure to do so was an omission on his part. He said that it was unintentional, and he did not recall doing anything to mislead the petitioner after the opinion from the direct appeal was issued. Appellate counsel said that the petitioner's family contacted him in January of 2009. When they called, he looked at the file and saw that the petitioner's case was "off track." Appellate counsel stated that he told the family that the petitioner's case was off track and tried to make it right. The petitioner's family's phone call was appellate counsel's first notification that something was not right with the petitioner's appeal.

Appellate counsel stated that he did not make any misrepresentations to the petitioner and what happened was an omission. He did not tell the petitioner anything that was untrue. He said that the petitioner and his family were confident that he would use his best professional skills. Appellate counsel further said that he should have followed through with the appeal and notified the petitioner. Appellate counsel said that the attorneys of record received copies of the opinion on direct appeal, and the only way the petitioner could have gotten a copy, other than waiting for the publication, was for him send it. Appellate counsel generally advised his clients and their families about how long the appeal process would take and that he would let them know as soon as he heard from the court. However, in this case, he did not recall specifically telling the petitioner and his family how long it would take.

On September 28, 2009, the post-conviction court entered an order denying the petitioner's motion to toll the statute of limitations and dismissing the petition for post-conviction relief. Based on appellate counsel's statement that he did not intentionally fail

to notify the petitioner of this court's decision on direct appeal, the post-conviction court considered appellate counsel's conduct as "negligen[t], [and] not willful misrepresentation[.]" The petitioner now appeals the denial of relief by the post-conviction court.

**Analysis**

On appeal, the petitioner argues that the post-conviction court erred in finding that there was no basis for tolling the post-conviction statute of limitations and dismissing his petition for post-conviction relief. The petitioner asserts that due to circumstances beyond his control, he was "precluded from pursuing remedies independently." He contends that he believed that his appeal was still pending based on appellate counsel's representations. The state responds that appellate counsel's actions "amounted to mere negligence and not an intentional misrepresentation, [thus] the post-conviction court properly determined that due process did not require the tolling of the . . . statute of limitations." We agree with the petitioner.

On appeal, this court is required to affirm the post-conviction court's findings unless the petitioner proves that the evidence preponderates against those findings. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). Our review of the post-conviction court's factual findings is de novo with a presumption that the findings are correct. Fields v. State, 40 S.W.3d 450, 457-58 (Tenn. 2001). Our review of the post-conviction court's legal conclusions and application of law to facts is de novo without a presumption of correctness. Id.

Pursuant to Tennessee Code Annotated § 40-30-102(a), a person must petition for post-conviction relief within one year of the date of the final action of the highest state appellate court to which they take an appeal or, if they take no appeal, within one year of the date on which the judgment becomes final. The statute further provides that:

> The statute of limitations shall not be tolled for any reason, including any tolling or saving provision otherwise available at law or equity. Time is of the essence of the right to file a petition for post-conviction relief or motion to reopen established by this chapter, and the one-year limitations period is an element of the right to file such an action and is a condition upon its exercise.

T. C. A. § 40-30-102(a). However, despite the one-year statute of limitations, a post-conviction court may still consider an untimely petition if: (1) the highest state appellate court or the United States Supreme Court established a new constitutional right with retrospective application, (2) new scientific evidence has established the petitioner's

innocence, or (3) a court has ruled that a previous conviction that enhanced the petitioner's sentence was invalid. Id. at § 40-30-102(b).

A court may also consider an untimely petition if applying the statute of limitations would deny the petitioner due process. Burford v. State, 845 S.W.2d 204, 209-10 (Tenn. 1992). To determine if due process requires tolling of the statute of limitations, a court must: "(1) determine when the limitations period would normally have begun to run; (2) determine whether the grounds for relief actually arose after the limitations period would normally have commenced; and (3) if the grounds are 'later-arising,' determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim." Sands v. State, 903 S.W.2d 297, 301 (Tenn. 1995). Due process requires a weighing of the petitioner's liberty interest against the state's interest in preventing the litigation of stale and fraudulent claims. Id.

The Tennessee Supreme Court applied the Burford principle in Williams v. State, 44 S.W.3d 464 (Tenn. 2001). In Williams, the petitioner filed his post-conviction petition nine months after the statute of limitations had expired, alleging that no notification was given by his appointed counsel with regard to the status of his direct appeal, counsel's intent to withdraw, and counsel's untimely application for permission to appeal to the Supreme Court. Williams, 44 S.W.3d at 466. The Tennessee Supreme Court stated that "[i]f a defendant erroneously believes that counsel is continuing to represent him or her, then the defendant is essentially precluded from pursuing certain remedies independently." Id. at 469. It further stated that "an attorney's misrepresentation, either attributable to deception or other misconduct" is a circumstance "beyond a defendant's control" that would preclude the defendant from actively pursuing post-conviction claims. Id. "The sole inquiry is . . . whether [the] limitations period is tolled because of due process concerns surrounding possible attorney misrepresentation." Id. at 471.

When petitioners claim that trial counsel's misrepresentation hampered them from filing a timely post-conviction petition, due process requires only that courts afford the petitioner "a reasonable opportunity after the expiration of the limitations period to present his claim in a meaningful time and manner." Id. However, our state supreme court emphasized,

> [W]e are not holding that a petitioner may be excused from filing an untimely post-conviction petition as a result of counsel's negligence. Instead, the focus here is only upon trial and appellate counsel's alleged misrepresentation in failing to properly withdraw from representation and in failing to notify the petitioner that no application for permission to appeal would be filed in this Court.

-5-

Id. at 468 n. 7.

In the present case, the record clearly indicates that the statute of limitations expired before the petitioner filed his petition for post-conviction relief. The jury convicted the petitioner on September 25, 2006. This court affirmed the conviction on October 30, 2007. Appellate counsel never filed a Rule 11 application for permission to appeal to the Tennessee Supreme Court. Thus, the statute of limitations expired on October 30, 2008, one year after the final disposition in the petitioner's case. The petitioner did not file his petition for post-conviction relief until March 12, 2009, almost five months after the date of the final action of the highest state appellate court to which the petitioner took an appeal. Relying on Williams, the petitioner argues that due process considerations should toll the statute of limitations period because appellate counsel misrepresented to the petitioner and his family that the appeals process was ongoing.

The record in this case shows that appellate counsel, a veteran criminal defense attorney, had a contract with the petitioner to represent him at the motion for new trial, on direct appeal to this court, and upon second-tier appellate review by the Tennessee Supreme Court. Appellate counsel testified that after this court's opinion denying the petitioner relief, the petitioner's case got "off track." Appellate counsel explained that the filing clerk who handled the docketing in his office was on maternity leave and never filed the petitioner's case in their system. As a result, the petitioner's file was closed and no Rule 11 was ever filed. Appellate counsel only went in search of the petitioner's file after the petitioner's family telephoned his office asking for the status of the case. Appellate counsel testified that "it's my belief, that my client, had every belief, that he was continuing to undertake the appeal and that the process was ongoing."

We view this case no differently than Moultrie v. State, in which this court held that the "unilateral termination of an appeal, without confirmation from the client, . . . deprives the defendant in a criminal case of his right to effective assistance of counsel." 542 S.W.2d 835, 838 (Tenn. Crim. App. 1976). See also Pinkston v. State, 668 S.W.2d 676, 677 (Tenn. Crim. App. 1984) superseded by rule as stated in State v. Evans, 108 S.W.3d 231, 234 (Tenn. Crim. App. 2003) and Roger Harris v. State, No. E2001-00782-CCA-R3-PC, 2002 WL 1939927 *2-3 (Tenn. Crim. App. at Knoxville, August 22, 2002). In Moultrie, retained counsel "failed to file a petition for certiorari despite the clear understanding with his client that this action would be taken." 542 S.W.2d 835, 838 (Tenn. Crim. App.1976). This court recognized that "in doing so, [counsel had] unilaterally terminated the defendant's appeal without notice and thus deprived his client of the opportunity to secure substitute counsel." Id. The petitioner's direct appeal was unilaterally terminated by appellate counsel following first-tier review by this court, and we granted a delayed appeal as a result.

-6-

Under the facts of this case, we conclude that the petitioner is entitled to a delayed appeal. Appellate counsel expressly advised the petitioner that he would be representing the petitioner throughout his appeal, including the Rule 11 application to the Tennessee Supreme Court. However, the record shows that the petitioner was not notified as to the status of his direct appeal. Appellate counsel conceded that he believed the petitioner's case was closed and failed to file a Rule 14 motion to withdraw or an application for permission to appeal to the Tennessee Supreme Court. In our view, appellate counsel effectively abandoned the petitioner's appeal. Moreover, the petitioner was without representation following his direct appeal, even though the record shows that he was still being represented by retained counsel. Appellate counsel immediately filed an affidavit and a petition for rehearing upon discovery that the petitioner's case had not been litigated consistently with the express terms of their contract. Based on the above authority, we reverse the judgment of the post-conviction court and grant the petitioner a delayed appeal to the Tennessee Supreme Court.

**Conclusion**

Based on the foregoing, the judgment of the post-conviction court is reversed. We hereby vacate the judgment in State v. Antonio Oliver, No. W2006-01736-CCA-R3-CD, 2007 WL 3194570 (Tenn. Crim. App. at Jackson, October 30, 2007), and reinstate it as of the date of this opinion. The petitioner shall have sixty days from the date that this judgment is filed to seek an appeal, pursuant to Rule 11, T.R.A.P., to the Tennessee Supreme Court of this court's judgment affirming his convictions. Pursuant to Tennessee Supreme Court Rule 28 § 9(D), the petitioner's post-conviction proceedings are stayed pending the final deposition of the delayed appeal to seek such review.

_____
CAMILLE R. MCMULLEN, JUDGE