# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs January 16, 2013

## CHRISTOPHER TURNER v. STATE OF TENNESSEE

### Appeal from the Criminal Court for Davidson County
### No. 2006-C-2626    Steve R. Dozier, Judge

### No. M2012-00655-CCA-R3-PC - Filed February 27, 2013

The Petitioner, Christopher Turner, appeals the Davidson County Criminal Court's denial of post-conviction relief from his 2008 conviction for attempted aggravated robbery and his effective nine-year sentence. On appeal, he contends that counsel provided the ineffective assistance of counsel by failing to investigate and interview witnesses adequately and by failing to request that his case be severed from his codefendant's case. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., J., and PAUL G. SUMMERS, SR. J., joined.

Manuel Benjamin Russ, Nashville, Tennessee, for the appellant, Christopher Turner.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Rachel Marie Sobrero, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This court summarized the facts of the case in the Petitioner's appeal of his conviction:

On August 7, 2006, Sean Turner,[1] the victim, went to visit a friend named "Tree" in the Edgehill Homes area of Nashville. Sean Turner worked with Tree and went to his house at around 9:00 p.m. to play video games and gamble. Sometime after midnight, Sean Turner left his friend's house and walked toward his car. Sean Turner was leaving because he had to get up to go to work the next day and wanted to get home to his fiancee. Sean Turner was also out of money from gambling. He had approximately two dollars and ten cents in his pocket.

As he walked toward his car, he saw a group of young men standing around. Sean Turner got into his car and started the engine. As he was backing out of the parking space, he turned to look behind the car. At that time, he saw a flash and then saw Appellant Lockridge standing over him. Appellant Lockridge pointed a gun at Sean Turner and told him to "set it out, drop it off." The victim thought that Appellant Lockridge was robbing him based on Lockridge's statement. Appellant Lockridge ordered Sean Turner to put his car into park. Sean Turner attempted to tell Appellant Lockridge that he only had two dollars and ten cents in his pockets, but Appellant Lockridge ordered Sean Turner to get out of the car. The victim refused to get out of the car. Appellant Lockridge continued to point the gun at Sean Turner and nudged him in the left side with the gun while continuing to order him out of the car.

Sean Turner begged Appellant Lockridge not to shoot him. Appellant Lockridge insisted that the victim was lying about not having any money but would not allow the victim to reach into his pockets to prove it. Appellant Lockridge cursed at the victim and grabbed at the door handle. He was unable to open the door. Suddenly, Appellant Lockridge looked up as if he had heard something. Then, Appellant Lockridge stepped back and looked away. Sean Turner saw that as an opportunity to drive away. The victim heard a gunshot and immediately could not feel his legs. Sean Turner described his body as feeling "rocky" and claimed that he could not breathe. Appellant Lockridge disappeared.

---

[1] Because Sean Turner and Appellant Christopher Allen Turner have the same last name, we will refer to Sean Turner by his full name or "the victim."

Sean Turner was scared. He tried to leave but was unable to put his foot on the accelerator to drive away. The victim tried to get out of the car but was unable to move so he opened the car door and fell out of the car, screaming for help.

About ten minutes later, a man approached Sean Turner, who was still lying on the ground. The victim pleaded for help, but the man demanded to know what the victim was doing in the neighborhood. The man did not render assistance; he continued to talk to the victim and question him.

Then, Appellant Turner walked up to the victim, kicked him, and spit on him. Appellant Turner produced a gun and told the victim that he "ought to finish [him] off." Appellant Turner pulled the hammer of the gun back to shoot the victim. The other man that was present stopped Appellant Turner. Appellant Turner then went around to the passenger side of the victim's car and searched inside. Appellant Turner returned to where the victim was lying in the street and searched the victim's pockets. The two men then put Sean Turner back into his car. The victim promised not to come back. The victim somehow managed to press the accelerator with his hand, causing the car to roll into a fence. The victim fell out of the car again. Someone eventually saw that the victim was shot and injured and called the police.

As a result of the incident, the victim is paralyzed from the waist down. Appellants Lockridge and Turner were indicted by the Davidson County Grand Jury in July of 2006 for one count of attempted especially aggravated robbery and one count of attempted first degree murder. The victim identified both Appellant Turner and Appellant Lockridge at trial.

At the conclusion of a jury trial, . . . Appellant Turner was found guilty of attempted aggravated robbery and not guilty of attempted first degree murder. Appellant Turner was sentenced to nine years as a Range II, multiple offender.

State v. Darrell Tywon Lockridge and Christopher Allen Turner, No. M2008-01217-CCA-R3-CD, slip op. at 2-3 (Tenn. Crim. App. Feb. 24, 2010), perm. app. denied (Tenn. Aug. 26, 2010).

At the post-conviction hearing, the Petitioner testified that he was housed in the Northwest correctional facility while his case was pending and that he was only able to speak with counsel face-to-face on the days of his scheduled court appearances. He said he spoke

to counsel approximately three times. He said that he told counsel he wanted to go to trial and that he and counsel discussed the trial and the strategies they might employ. He said counsel discussed with him the State's theory of the case and the evidence the State would present at the trial.

The Petitioner testified that counsel did not discuss severing his case and denied counsel's discussing the advantages and disadvantages of severance. He thought severance would have benefitted him at the trial and said, "the jury was listening to everything that was going on with [his codefendant], and I think they found me guilty on the strength of what . . . he said I did." He said that had he known about the possibility of severing his case, he would have wanted counsel to move for a severance.

The Petitioner testified that he gave counsel the names of three potential witnesses, that he wanted counsel to subpoena those witnesses to testify at the trial, and that counsel told him they were not needed. He said he understood they were not necessary because his case was strong and because the trial was going well. He said that one of the witnesses was in confinement at the time and was easily located and that he provided counsel two addresses for the other witnesses. He said the witnesses were present during the shooting. He did not know if the police interviewed these witnesses but said he thought they would provide new information. He said counsel did not talk to the witnesses, although he subpoenaed them. He said that the witnesses were Michael and DeShawn Burleson and that he had forgotten the female witness's name. He said the female was the only witness who appeared in court the day of the trial. He agreed no witnesses testified for the defense at the trial. The Petitioner stated that counsel did not mention requesting funds for an investigator.

The Petitioner testified that he told counsel the victim was in the neighborhood the night of the shooting because of drugs and that the case was "a drug deal gone bad," not a robbery. He said the victim was there to buy drugs, though he did not know if the victim used drugs. He said that he told counsel the victim carried a gun that night and that the "gun got picked up" by someone at the scene. He denied knowing who picked up the gun and said he left the scene to take his codefendant, who had been shot, to the hospital. He denied counsel's questioning the victim about these events at the trial.

On cross-examination, the Petitioner testified that he and several other people saw the shooting. He said he told counsel about the three witnesses one month before the trial and before he received the State's first plea offer. He said that when the female witness appeared in court, he identified her to counsel. He did not recall whether he wrote counsel letters and said the only time he spoke to counsel was when he came to court. He said counsel came to see him in prison once.

-4-

The Petitioner testified that he told counsel twice that the prosecutor was asking leading questions during her direct examination of the victim and that counsel needed to object. He said he learned about leading questions from a previous case. He agreed that the victim identified the Petitioner and that the victim said the Petitioner pointed a gun at him. He said that although the victim testified that he was visiting a resident where the shooting occurred, the victim was there only to buy drugs. The Petitioner admitted being at the scene during the shooting but denied the victim's seeing him. He denied talking to the victim. He denied Michael and DeShawn Burleson were subpoenaed to testify at the post-conviction hearing.

Counsel testified that he had practiced law since 1997 and that approximately ninety-five percent of his practice was criminal defense. He said he began his representation of the Petitioner in 2007. Although he did not recall the number of times he spoke with the Petitioner, he said that they "had a few discussion dates" and that he went to see the Petitioner twice at Riverbend prison. He said their meetings lasted forty-five minutes to two hours, depending on the issue being discussed. He said he reviewed the State's discovery package and discussed possible defenses with the Petitioner. He said the defense theory was that although the Petitioner was present during the shooting, he did not participate or conspire with the codefendant.

Counsel testified that the Petitioner told him about a woman who was present during the shooting, that the Petitioner did not know her name, and that there were "several different variations" of her name. He said he unsuccessfully attempted to locate the woman. He said he spoke with one of the Burleson brothers, though he did not recall which one or when he spoke to him. He said that he did not recall Mr. Burleson's providing helpful information and that Mr. Burleson's criminal history would have made the Petitioner's "situation worse." He agreed that Donna Brook and Yolanda Daniels were subpoenaed and that the woman who came to court was either Ms. Brook or Ms. Daniels, but that the woman did not provide any helpful information that would have aided the defense. He said that had the woman and Mr. Burleson had useful information, he would have called them to testify. He recalled using the "person locator" feature on LexisNexis to locate these potential witnesses, which provided detailed information about the person's life.

Counsel testified that he did not recall the Petitioner's telling him to object to the prosecutor's leading questions at the trial. He said that the Petitioner may have been referring to the prosecutor's beginning a question with a "prepositional phrase," which made it sound like a leading question. He recalled the prosecutor's beginning a question with "before kicking him." He said testimony regarding the Petitioner's kicking the victim was presented earlier in the trial through the victim's testimony. He said that although the question was "technically" leading, he believed the court would have overruled the objection

on the ground that the Petitioner's kicking the victim was previously presented during the trial. He said he made a strategic decision not to object to the prosecutor's question.

Counsel testified that he considered filing a motion to sever the Petitioner's case and that he was concerned about the State's presenting evidence that might raise a confrontation issue. He said that he filed a motion to prevent the State from "bringing out any such issue at the trial." He said that with regard to severance, the Petitioner's and the codefendant's alleged actions appeared to have occurred almost simultaneously. He said the events involved the same victim and occurred at the same time and place. He said that the Petitioner admitted being present in the general area at the time of the shooting and that he did not think there was sufficient evidence that would have permitted the trial court to grant a severance. He believed a motion to sever would have been denied and considered frivolous.

On cross-examination, counsel testified that he did not request funds for an investigator to locate the potential witnesses provided by the Petitioner. He said that although he subpoenaed the potential witnesses for the July 2007 trial date, he determined by the January 2008 trial that the witnesses did not have any beneficial information. He said that before the trial, he told the Petitioner that the potential witness would not help the defense.

Counsel testified that the Petitioner told him the victim made the allegations against the Petitioner because there was "bad blood" between them. He said, though, he did not find any evidence of this. He said the victim testified at the trial that he did not know the Petitioner. He said the Petitioner did not believe the victim's story that the victim was playing video games with a friend the night of the shooting and denied the Petitioner's telling him about a drug deal that went wrong. He said there was no evidence suggesting the victim was doing anything other than playing video games at a friend's home.

Counsel testified that he did not believe severing the Petitioner's case would have benefitted the defense because the theory of the case and his line of questioning at the trial was that the Petitioner's codefendant was guilty of the offenses, not the Petitioner. He recalled the victim's testifying that he left his friend's home and saw a group of men standing near his car. Counsel said he wanted to show that during the confusion of being shot, assaulted, and accosted by the codefendant, the victim confused the Petitioner with another man. He said he was concerned about the "spillover effect" that might have occurred with regard to the jury's finding the Petitioner guilty after hearing evidence of the codefendant's actions. He said he made a strategic decision to allow the jury to hear evidence of what happened to the victim to show the victim confused the Petitioner with another person. He believed this was a better strategy compared to separating the two cases. He said the Petitioner did not complain about not severing the cases.

Counsel testified that in preparing for the January 2008 trial, he spent approximately two hours with the Petitioner the day before the trial and that he reviewed his notes, the indictment, and the questions he planned to ask during the trial. He said he spent about nine hours preparing for the trial. With regard to the July 2007 trial date, he spent approximately three and one-half hours preparing for the trial. He said he spent about one and one-half hours with the Petitioner and the remainder of the time reviewing his notes and preparing his questions. He stated that he spent almost seven additional hours preparing the Petitioner's case. He said he met with the Petitioner at least three additional times, discussed the case with the prosecutor, and continued preparing for the trial.

The trial court denied post-conviction relief. The court concluded that counsel was not ineffective by failing to request the Petitioner's case be severed. The court found that severance was not appropriate in this case because the charged offenses occurred within minutes and the State's theory of the case was that the Petitioner acted in concert with the codefendant. With regard to counsel's investigating potential witnesses, the court credited counsel's testimony. The court found that counsel spoke to the potential witnesses the Petitioner wanted called as witnesses and made the tactical decision not to call them because they did not help the Petitioner's case. The court noted that the Petitioner presented no evidence showing the witnesses would have provided beneficial information at the trial. This appeal followed.

As a preliminary matter, the State contends that the appeal should be dismissed because the Petitioner failed to file a timely notice of appeal and that waiver is not in the interest of justice. The Petitioner does not respond to this issue. Tennessee Rule of Appellate Procedure 4(a) states,

> In an appeal as of right to the . . . Court of Criminal Appeals, the notice of appeal required by Rule 3 shall be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from; however, in all criminal cases the "notice of appeal" document is not jurisdictional and the filing of such document may be waived in the interest of justice.

The record shows that the order denying post-conviction relief was filed on February 6, 2012, and that the Petitioner's notice of appeal was filed on March 22, 2012. Although the Petitioner was represented by counsel, no explanation for the untimely notice of appeal has been presented. Although we agree the notice of appeal was untimely, we will consider the issues on the merits in the interest of justice.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2012). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457. Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103 (2012).

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the Petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance fell below a reasonable standard is not enough because the Petitioner must also show that but for the substandard performance, there is "a reasonable probability that . . . the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. Henley v. State, 960 S.W.2d 572, 580 (Tenn. 1997). The performance prong requires a petitioner raising a claim of ineffectiveness to show that counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability means a "probability sufficient to undermine confidence in the outcome." Id.

The Petitioner contends that counsel provided ineffective assistance by failing to investigate and interview witnesses adequately. He argues that counsel's failure to locate and call as witnesses the Burleson brothers and Ms. Brook, who were material to his defense, was ineffective assistance. The State responds that trial court properly denied relief. We agree with the State.

Counsel testified that he located two of the three potential witnesses the Petitioner asked counsel to call as witnesses. He said he spoke with one of the Burleson brothers, who did not have any helpful information. In addition, Mr. Burleson had a criminal history that

led counsel to conclude Mr. Burleson's testimony would have been harmful to the Petitioner's case. Counsel made the strategic decision not to call Mr. Burleson as a witness. With regard to Ms. Brook, counsel testified that he spoke with Ms. Brook before the trial and concluded that the she, too, did not have any helpful information. Counsel made a strategic decision not to call her as a witness. Counsel investigated and made tactical and strategic decisions based on his communications with the Petitioner and potential witnesses. See Taylor v. State, 814 S.W.2d 374, 378 (Tenn. Crim. App. 1991) (concluding that "[a]llegations of ineffective assistance of counsel relating to matters of trial strategy or tactics do not provide a basis for post-conviction relief").

We note that at the post-conviction hearing, the Petitioner failed to call as witnesses Ms. Brook and the Burleson brothers. There is no evidence suggesting that any of the potential witnesses had favorable or material information to the Petitioner's defense. The failure to present the witnesses at the hearing prevents post-conviction relief. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) (concluding that a claim of ineffective assistance of counsel based on counsel's failure to present a witness at the trial requires the petitioner to present the witness's testimony at the post-conviction hearing). The Petitioner is not entitled to relief.

The Petitioner also contends that counsel provided ineffective assistance by failing to request that his case be severed from his codefendant's case. He argues that counsel's "failure to file the severance, to at least attempt to give [him] some options when planning his defense, whether ultimately successful or not, constituted ineffective assistance. . . ." The State responds that counsel was not deficient. We agree with the State.

Counsel's testified that he considered filing a motion to sever the Petitioner's case but concluded that the motion would be denied and would not be beneficial. Based on the facts of the case, counsel concluded that the Petitioner's and the codefendant's alleged actions occurred almost simultaneously. The events involved the same victim and occurred at the same time and place. The State's theory was that the Petitioner and his codefendant acted in concert the night of the shooting, and the Petitioner admitted being present at the time of the shooting. Counsel concluded that there was insufficient evidence to support a trial court's granting a severance motion.

Tennessee Rule of Criminal Procedure 8(c)(1) permits the joinder of defendants "if each of the defendants is charged with accountability for each offense included." Rule 8(c)(3) permits joinder of defendants when conspiracy is not an alleged offense but when the offenses charged are "so closely connected in time, place, and occasion that it would be difficult to separate proof of one charge from proof of the others." Rule 14(c)(2), though, provides, in relevant part, that "on motion of . . . the defendant . . . the court shall grant a

severance of defendants if before trial, the court finds a severance is . . . appropriate to promote a fair determination of the guilt or innocence of one or more defendants . . . ." This court has concluded that a joint trial of multiple defendants charged with assault and battery with the intent to commit rape was proper when the offenses were committed at the same place and upon the same victim. <u>Franks v. State</u>, 541 S.W.2d 955 (Tenn. Crim. App. 1976). We conclude that counsel was not deficient by failing to file a motion to sever the Petitioner's case.

Additionally, counsel made a strategic decision not to file a severance motion because he believed trying the cases together might benefit the Petitioner. The Petitioner's theory was that although the Petitioner was present in the general vicinity of the shooting, the violent acts of the codefendant confused the victim, causing him to identify the Petitioner erroneously. Counsel made a strategic decision to allow the jury to hear evidence of the codefendant's shooting and assaulting the victim to show the victim confused the Petitioner with another person. He believed this was a better strategy compared to separating the two cases. We cannot conclude that counsel was deficient by failing to file a motion to sever the Petitioner's case.

The Petitioner has failed to establish his claim by clear and convincing evidence and is not entitled to relief. In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.


_____
JOSEPH M. TIPTON, PRESIDING JUDGE