IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
January 8, 2013 Session

## DONALD RAGLAND v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 06-06182      John T. Fowlkes, Jr., Judge**

**No. W2012-00743-CCA-R3-PC  - Filed March 8, 2013**

The Petitioner, Donald Ragland, appeals as of right from the Shelby County Criminal Court's denial of his petition for post-conviction relief. The Petitioner contends (1) that the post-conviction court erred by not forcing the Petitioner to testify at the post-conviction hearing; and (2) that the Petitioner received ineffective assistance from his trial counsel because trial counsel withdrew a motion to suppress a photographic identification of the Petitioner. Discerning no error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JERRY L. SMITH and JOHN EVERETT WILLIAMS, JJ., joined.

Marvin Adams, III, Memphis, Tennessee (on appeal); and Alexander C. Wharton, Memphis, Tennessee (at post-conviction hearing), for the appellant, Donald Ragland.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; Amy P. Weirich, District Attorney General; Reginald Henderson and Muriel Malone, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

FACTUAL BACKGROUND

In 2008, the Petitioner was convicted of first degree premeditated murder and sentenced to life, with the possibility of parole. See State v. Donald Ragland, No. W2008-02065-CCA-R3-CD, 2009 WL 4825182 (Tenn. Crim. App. Dec. 15, 2009), perm. app. denied, (Tenn. May 11, 2010). The evidence at trial established that, on the afternoon of December 9, 2005, the Petitioner approached the victim, LaAunzae Grady, outside St.

Elmo's Market in Memphis and shot the victim four times. Id. at *1, 7. The Petitioner had quickly become the primary suspect in the victim's murder when police were informed by "friends and relatives of the victim" that the Petitioner "had said he intended to kill the victim" because the victim had killed the Petitioner's younger brother "a few years before." Id. at *1. Several witnesses also noted that the gunman was left-handed like the Petitioner. Id. at *4-5. Additionally, a witness saw the gunman flee in "a white Jeep Cherokee," the same type of vehicle owned by Petitioner. Id. at *1. Based upon this information and "an outstanding arrest warrant for a traffic offense," the Petitioner was arrested on December 12, 2005. Id.

Also on December 12, 2005, police interviewed an eyewitness, Michael Jones, who had seen a man walking away from St. Elmo's Market shortly after the shooting with a "zoned-out look on his face" and "carrying something in his pockets." Ragland, 2009 WL 4825182, at *5. Mr. Jones was asked to look at a photographic lineup and picked out the Petitioner's photograph. Mr. Jones told the police that he had "picked out a guy that [he] seen [sic] that looked like the guy [he] saw walking" away from St. Elmo's Market, but that he was "not 100 percent sure." Mr. Jones would later admit during cross-examination at trial that he had never seen the Petitioner before and that he was not "100 percent sure" that the Petitioner was the person he had seen on December 9, 2005. Mr. Jones testified that he selected the Petitioner's picture out of the lineup because "if [he] had [to] pick somebody out, that was him, you know." Mr. Jones also admitted that he picked the Petitioner's picture without being "100 percent sure" despite having read and signed an "Advice to Witness Viewing Photographic Display" form that instructed him not to make an identification unless he was "positive of such identification."

After being arrested, the Petitioner spoke with police officers on several occasions. Ragland, 2009 WL 4825182, at *1-2. At first, the Petitioner denied any involvement in the victim's death. Id. at *1. However, the Petitioner "soon changed his story" and during "an extensive statement . . . admitted his responsibility for killing the victim," claiming that it was part of a gang conspiracy. Id. After being presented with evidence that he had lied about the gang conspiracy, the Petitioner "admitted to sole responsibility for the victim's murder." Id. at *2. The Petitioner filed a motion to suppress his statements to the police alleging that he had requested a lawyer prior to giving his statements and that "the police lacked probable cause to arrest him for murder." Id. at *7. The trial court denied the Petitioner's motion to suppress. Id. at *3. On direct appeal, this court affirmed the Petitioner's conviction in general and specifically affirmed the trial court's denial of the Petitioner's motion to suppress his statements to the police. Id. at *1, 7-8. Our supreme court declined to review this court's opinion.

-2-

On February 25, 2011, the Petitioner filed a pro se petition for post-conviction relief alleging, among other issues, that he received ineffective assistance of counsel because his trial counsel "failed to file a written motion to suppress" Mr. Jones's identification of the Petitioner from the photographic lineup. Counsel was appointed to represent the Petitioner, and an evidentiary hearing was held on September 8, 2011. That same day, the Petitioner filed a pro se amendment to his petition for post-conviction relief. At the evidentiary hearing, the Petitioner stated that he had filed the petition for post-conviction relief, but refused to testify at the hearing because he had a civil rights lawsuit pending in federal court. The Petitioner further stated that his decision was based upon his "own judgment after consultation" with counsel. Upon further questioning by the post-conviction court, the Petitioner stated that he did not want to testify because he had not "received [full] discovery" and had not "been able to really properly present [his] arguments." The Petitioner then stated that he was waiving his right to testify at the hearing freely and voluntarily, without any coercion, and that he understood that he would not have "a second bite at the apple."

Trial counsel testified that he had practiced criminal defense for over twenty years as an attorney with the Public Defender's office in Shelby County. Trial counsel further testified that since he had started practicing law, he had tried over a hundred cases, including "[s]everal murder twos [and] a handful of murder ones." According to trial counsel, the Petitioner "was developed as a suspect almost immediately because the word on the street . . . was that he was out to avenge his brother's death at some point." Trial counsel filed a motion to suppress the Petitioner's statements to the police because he felt the police had lacked probable cause to arrest the Petitioner. Trial counsel testified that the Petitioner's statements to the police were the most important evidence against him and that without those statements, the State would not be able to prosecute the case. Trial counsel denied that Mr. Jones was "the key witness for the State." Instead, trial counsel believed that the investigator who took the Petitioner's statements was the most important witness for the State.

Trial counsel testified that he filed a motion to suppress Mr. Jones's photographic identification of the Petitioner because Mr. Jones was "equivocal in his identification" and because Mr. Jones had told trial counsel's investigator that the police had suggested to Mr. Jones that he select the Petitioner's photograph. Trial counsel testified that he had trouble locating Mr. Jones prior to trial, but eventually spoke with him personally. Trial counsel asked Mr. Jones if it was "suggested to [him] to pick out [the Petitioner's] photo." Trial counsel testified that Mr. Jones told him the police did not suggest to him that he select the Petitioner's photograph. Trial counsel withdrew the motion to suppress because he felt it was "without merit." Trial counsel informed the Petitioner that he had withdrawn the motion because Mr. Jones had "unequivocally told [him] that it was not suggested." Trial counsel testified that he cross-examined Mr. Jones "vigorously" at trial about the photographic lineup

and his identification of the Petitioner. Trial counsel described Mr. Jones as "very equivocal" at trial about his identification of the Petitioner.

On March 22, 2012, the post-conviction court entered a written order denying post-conviction relief to the Petitioner.[1] The post-conviction court noted that despite the Petitioner's contrary assertions, trial counsel had actually filed a motion to suppress Mr. Jones's photographic identification. However, trial counsel withdrew the motion after speaking with Mr. Jones and learning that his identification was "untainted." The post-conviction court concluded that the Petitioner had failed to prove his allegations by clear and convincing evidence and that trial counsel had "exercised reasonableness and upheld the standards of the legal profession" in his decision to withdraw the motion to suppress. The Petitioner filed a timely notice of appeal to this court.

## ANALYSIS

### I. Petitioner's Decision Not to Testify at the Evidentiary Hearing

The Petitioner contends that the post-conviction court erred by not forcing the Petitioner to testify, against his will, at the evidentiary hearing. The Petitioner argues that the Post-Conviction Procedure Act and the rules governing post-conviction evidentiary hearings require a petitioner to testify at the evidentiary hearing. The Petitioner further argues that because he was "the only witness who could shed light on his mental state while in police custody," he was denied "due process" by the post-conviction court's acquiescence regarding his decision not to testify at the evidentiary hearing. The State responds that the decision whether or not to testify "rests with the petitioner." The State further responds that the Petitioner was "in charge of his proof" and had the burden to prove his allegations by clear and convincing evidence.

The Post-Conviction Procedure Act provides that a petitioner "shall have the burden of proving the allegations of fact by clear and convincing evidence" at an evidentiary hearing. Tenn. Code Ann. § 40-30-110(f). To that end, a petitioner "shall appear and give testimony at the evidentiary hearing if the petition raises substantial questions of fact as to events in which the petitioner participated, unless the petitioner is incarcerated out of state." Tenn. Code Ann. § 40-30-110(a). Likewise, Tennessee Supreme Court Rule 28 provides that

---

[1] The Petitioner raised several issues in his pro se petition and amended petition for post-conviction relief. The post-conviction court denied post-conviction relief on all of the Petitioner's claims. On appeal, the Petitioner raises only the issue of ineffective assistance of counsel with respect to Mr. Jones's photographic identification. The Petitioner has waived appellate review of all remaining issues by not raising them in his brief. See Tenn. R. App. P. 13(b).

a petitioner "has the right to testify" unless the petitioner is incarcerated in another state. Tenn. R. Sup. Ct. 28, § 8(C)(1)(a). Rule 28 also provides that a petitioner "shall testify at the evidentiary hearing if the petition raises substantial issues of facts." Tenn. R. Sup. Ct. 28, § 8(C)(1)(b). However, "[u]nder no circumstances shall petitioner be required to testify regarding the facts of the conviction which the petition attacks unless necessary to establish the allegations of the petition . . . ." Tenn. R. Sup. Ct. 28, § 8(C)(1)(d).

"All that due process requires in the post-conviction setting is that the [petitioner] have the opportunity to be heard at a meaningful time and in a meaningful manner." Stokes v. State, 146 S.W.3d 56, 61 (Tenn. 2004) (quoting House v. State, 911 S.W.2d 705, 711 (Tenn. 1995)) (internal quotation marks omitted). To that end, a petitioner receives a full and fair hearing when "given the opportunity to present proof and argument on the petition for post-conviction relief." House, 911 S.W.2d at 714 (emphasis added). A petitioner may choose "not to avail himself of that opportunity" even if that decision would "effectively [waive] his right to a post-conviction proceeding." David Avery v. State, No. M2011-02625-CCA-R3-PC, 2012 WL 6570737, at *5 (Tenn. Crim. App. Dec. 17, 2012).

Here, the Petitioner was given an opportunity "to be heard at a meaningful time and in a meaningful manner." The Petitioner stated that he was freely and voluntarily waiving his right to testify at the evidentiary hearing because he had a civil rights lawsuit pending in federal court and because he felt he had not received full "discovery" from the State. The post-conviction court explained to the Petitioner that he risked waiving his post-conviction claims by not testifying and that he would not get a "second bite at the apple." The Petitioner stated that he understood and reiterated his decision not to testify at the evidentiary hearing. Despite this, the Petitioner now argues on appeal that the post-conviction court erred by not forcing him to testify at the evidentiary hearing.

The Petitioner's argument runs contrary to both the letter and the spirit of the Post-Conviction Procedure Act. The Post-Conviction Procedure Act places a high burden on the petitioner to prove all allegations of fact by clear and convincing evidence. As such, it requires a petitioner to testify "if the petition raises substantial questions of fact as to events in which the petitioner participated." Tenn. Code Ann. § 40-30-110(a). This requirement is a logical extension of the burden that petitioners prove their factual allegations by clear and convincing evidence and it is designed to prevent petitioners from attempting to circumvent that burden by withholding evidence only they can provide. A petitioner may refuse to testify and risk the consequences of such a decision. However, a petitioner's knowing and voluntary decision not to testify at a evidentiary hearing does not invalidate the entire post-conviction proceedings. To hold otherwise would require this court to depart from sense and reason. Accordingly, we conclude that this issue is without merit.

*II. Ineffective Assistance of Trial Counsel*

The Petitioner also contends that the post-conviction court erred by dismissing his petition for post-conviction relief. The Petitioner argues that he received ineffective assistance of counsel because his trial counsel failed to file a motion to suppress Mr. Jones's photographic identification of the Petitioner. The Petitioner further argues that trial counsel's reliance on Mr. Jones's statement that he was not coerced into picking the Petitioner's photograph was "inadequate" because Mr. Jones was "a lay witness [asked] to answer a question which amounts to a conclusion of law." The Petitioner also argues that he was prejudiced by trial counsel's actions because Mr. Jones's photographic identification of the Petitioner provided the sole probable cause for the Petitioner's arrest. The State responds that the Petitioner failed to show any deficiency in trial counsel's performance or any prejudice.

As stated above, the burden in a post-conviction proceeding is on the petitioner to prove his allegations of fact supporting his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); see Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved" by the post-conviction court. Id. Because they relate to mixed questions of law and fact, we review the post-conviction court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Id. at 457.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance falls below a reasonable standard is not enough; rather, the petitioner must also show that but for the substandard performance, there is a reasonable probability that "the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The Strickland standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. State v. Melson, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

There is nothing in the record before this court to suggest that trial counsel's performance was deficient with regards to Mr. Jones's photographic identification of the Petitioner. Trial counsel testified that he filed a motion to suppress the photographic

identification because Mr. Jones was "equivocal" in his identification and because Mr. Jones had told trial counsel's investigator that the police had suggested to Mr. Jones that he select the Petitioner's photograph. However, Mr. Jones personally told trial counsel prior to trial that the police had not suggested to him that he select the Petitioner's photograph. At that time, trial counsel felt the motion to suppress lacked merit and withdrew it. Trial counsel testified that he "vigorously" cross-examined Mr. Jones at trial and was able to get Mr. Jones to admit on cross-examination that he was not "100 percent sure" that the Petitioner was the person he saw walking away from St. Elmo's Market on December 9, 2005. The Petitioner presented no evidence at the post-conviction hearing to contradict trial counsel's testimony or to establish that Mr. Jones had been coerced into picking the Petitioner's photograph out of the lineup. Accordingly, we agree with the post-conviction court's conclusion that trial counsel's actions did not amount to ineffective assistance of counsel.

With respect to the Petitioner's claims that absent Mr. Jones's photographic identification the police lacked probable cause to arrest him for the victim's murder, we note that the facts are to the contrary. The police did not speak with Mr. Jones until December 12, 2009, the day that the Petitioner was arrested and well after the Petitioner had been identified as a suspect. The Petitioner was arrested "on the basis of an outstanding arrest warrant for a traffic offense." Ragland, 2009 WL 4825182, at *1. In addition to the outstanding warrant, as this court stated in its opinion on direct appeal, at the time the Petitioner was arrested the police knew "(1) the [Petitioner] had vowed to kill the victim; (2) he operated a white Jeep Cherokee, a type of car seen in the area at the time of the murder; and (3) the [Petitioner] and the victim's killer were both left-handed." Id. at *8. Far from being the only evidence used to provide probable cause for the Petitioner's arrest, Mr. Jones's photographic identification was not mentioned by the trial court or this court in their determinations that probable cause existed to hold the Petitioner as a suspect in the victim's murder. Accordingly, we conclude that the post-conviction court did not err in dismissing the petition for post-conviction relief.

CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE