# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs September 18, 2013

## AKO HASSAN NEJAD v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2007-B-1748     Cheryl Blackburn, Judge**

---

**No.  M2013-00223-CCA-R3-PC   Filed October 14,2013**

---

The Petitioner, Ako Hassan Nejad, appeals the Davidson County Criminal Court's denial of his petition for post-conviction relief from his 2008 convictions for conspiracy to commit first degree murder and attempt to commit second degree murder and his effective Range I, thirty-seven-year sentence.  The Petitioner contends that he received the ineffective assistance of counsel because counsel failed to call a material witness and failed to present a defense.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which ALAN E. GLENN and JEFFREY S. BIVINS, JJ., joined.

Ryan C. Caldwell, Nashville, Tennessee, for the appellant, Ako Hassan Nejad.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Robert Elliott McGuire, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Petitioner appealed his convictions, and this court affirmed the judgments of conviction and summarized the facts of the case as follows:

> On August 4, 2006, the defendants and several other individuals gathered at Paragon Mills Park for the purpose of retaliating against two individuals, Darion Coleman and an individual known only as "Germaine," who had robbed defendant Aso Nejad ("Aso") of $1500, during a drug deal. Members of the group, which included the defendants, Bushra Salih,

Nechirvan Yahya, and a few others, made phone calls to the intended victims, setting them up to be ambushed under the guise of arranging a further drug deal. After making the necessary arrangements, the group went to a parking lot at Edwin Warner Park, the location of the attempted ambush. Defendant Ako then instructed the group that when the intended victims arrived, he was going to "take out" the driver, Salih was to "take out" the front passenger, and Defendant Aso and Yahya were to "take out" anyone else, whether they were in the back seat or in a separate vehicle. Each of those four conspirators armed themselves. Salih waited, alone, in a car for the intended victims while the other three conspirators waited behind some trees. Two other group members served as lookouts.

The attempted ambush was foiled when a Metro park ranger spotted Salih sitting in the car and pulled up to investigate. After inquiring what Salih was doing, alone, in the park and whether he had any contraband, the officer asked Salih to turn off his engine, and began to get out of his vehicle. Salih responded by attempting to flee in his vehicle. As the officer pursued him, gunshots started coming at him. Salih's car soon swerved off the road into a ditch, and Salih fled into a wooded area. When the officer exited his patrol car to pursue, he noticed multiple bullet holes in the vehicle, including one that was only a foot and a half from where his head had been located. The officer discontinued the pursuit. Several hours later, Salih was taken into custody by law enforcement.

Tracing the license plate on the abandoned vehicle led police to Defendant Ako. Conducting interviews, following forensic leads, and searching various cell phone records eventually led police to Defendant Aso and the remaining co-conspirators.

*State v. Aso Hassan Nejad a.k.a. Diako Nejad and Ako Hassan Nejad*, No. M2009-00481-CCA-R3-CD, slip op. at 2 (Tenn. Crim. App. Sept. 14, 2010), *perm. app. denied* (Tenn. Feb. 17, 2011).

The Petitioner filed a petition for post-conviction relief contending that he received the ineffective assistance of counsel. Relevant to this appeal, he argued that counsel failed to subpoena material witnesses and failed to investigate or prepare for the trial.

At the post-conviction hearing, the Petitioner testified that he met with counsel three times in the thirteen months before the trial, that he did not remember speaking with counsel on the telephone, and that his family spoke with counsel before the trial. He said that counsel

-2-

was "just really checking up on [his] well-being" the first two times they met but that he was concerned and asked counsel about the charges and bond. He said counsel gave him a brief explanation of the charges but never explained how much time he could serve if convicted. He said that on the Friday before the trial, counsel met with him and told him that he faced fifteen to twenty-five years and that the State had offered sixteen years, which he rejected. He said counsel did not begin asking him about potential witnesses or preparing for the trial until they met the Friday before the trial and did not hire an investigator before the trial. He said that after the trial, he wrote counsel and told him to hire an investigator and that his family hired one.

The Petitioner testified that after counsel explained the charge of conspiracy to commit first degree murder, he told counsel he never intended to kill anyone and that the plan was to rob the men who had taken $1500 from his brother. He thought counsel would argue the robbery theory to the jury. He said he told counsel about a couple of people who could testify about the plan, including Drau Kokoye. He said that Bushra Salih, a friend and co-conspirator, was arrested for fleeing the scene and gun possession and that Mr. Kokoye gave bond money to Mr. Salih's girlfriend, who posted the bond. He said that on the day after the incident, he went to see Mr. Salih and that Mr. Kokoye was there and heard the Petitioner and Mr. Salih's conversation. He said that he asked Mr. Salih why he was arrested and that Mr. Salih stated he ran from the officer. He said that when Mr. Salih asked him about the shooting, he told Mr. Salih that he did not know anything and that Mr. Salih would have to ask the friend who gave them the guns. He said Mr. Salih repeatedly stated that they made a mistake and that they should have never gone to rob the men. He said that when he asked Mr. Salih about the wreck, Mr. Salih told him that he was drunk and speeding when he fled from the officer and that he lost control when he took a turn.

The Petitioner testified that Mr. Salih, Delosh Ahmed, and Cedric Wicks testified at the trial. He said that Mr. Salih's testimony was not true and that Mr. Kokoye, Mr. Ahmed, and Nechirvan Yahya, who were co-conspirators, could have contradicted Mr. Salih's testimony. He said that Mr. Salih was not charged with anything directly related to the case. He said he asked counsel to speak with Mr. Kokoye, Mr. Yahya, and Mr. Ahmed because they were present that night and knew what happened. He said that when he was in jail, counsel told him the case would settle before the trial. He said that when the State offered sixteen years on the Friday before the trial, counsel told him the case might go to trial the following Monday and asked for names of potential witnesses and that he told counsel to interview Mr. Kokoye. He said counsel told him he would contact Mr. Kokoye and obtain his testimony. He said that because Mr. Salih testified at the bond hearing, he knew Mr. Salih would testify for the State at the trial and would be an unfavorable witness for the defense. He said counsel did nothing with the information about Mr. Kokoye and did not subpoena him.

-3-

The Petitioner testified that he thought counsel would tell the jury about his trying to recover his brother's money. He said that instead, counsel told the jury to look at the facts and "find out for [themselves] what happened." He said counsel never told the jury that he went to rob the men who had robbed his brother. He said his issues with counsel were created by a lack of communication. He said that he assumed counsel would argue the robbery theory because counsel did not ask about potential witnesses or about what happened until the Friday before the trial. He said that he and counsel argued when the Petitioner wrote questions for counsel to ask the witnesses and that counsel told the Petitioner to let him do his job.

The Petitioner testified that because counsel did not subpoena any witnesses, he needed to testify in order for the jury to hear what happened but that counsel advised him not to testify because he had a "history." He felt the trial was over when counsel advised him not to testify because he did not have any evidence to contradict the State's evidence. He talked to counsel about his concerns with not presenting witnesses to establish a defense. He said that during their first few meetings, he told counsel the charges were serious, though he did not know the sentence he faced. He asked counsel to visit the crime scene and investigate, which he said counsel failed to do.

The Petitioner disagreed with Officer Spray's trial testimony that he saw the Petitioner in the park earlier on the night of the incident. He said that Officer Spray testified about a gambling sting and previous encounters with the Petitioner but that he had never seen Officer Spray. He said that when Officer Spray began testifying about the previous encounters, he told counsel he had never been arrested during a gambling sting. Officer Spray testified that he gave the Petitioner a citation on February 1, 2006. The Petitioner said that although he received a gambling citation on February 1, 2006, the citation was issued by Officer Howard Wright, not Officer Spray, and that it was not related to the gambling sting. He said that Officer Spray may have seen him in the park but that he had not had a conversation with Officer Spray. He said multiple witnesses, including Karzan Abubakr, Shiavan Gulnasky, and those who were arrested in the gambling sting, could have testified that he was not in the park during the gambling sting.

The Petitioner testified that after he was convicted, counsel filed a late motion for a new trial. He said he asked counsel repeatedly to file the motion on time and sent counsel a letter with a list of issues he wanted raised. He said that during sentencing, he wanted to testify and express his feelings about what happened. He said that he was going to maintain his innocence but that he "felt bad." He said it "was a plan that had gone bad."

On cross-examination, the Petitioner testified that Mr. Kokoye was present during the conversation he had with Mr. Salih on the day after the incident about which Mr. Salih

testified. He said Mr. Kokoye could have testified that the Petitioner never told Mr. Salih he shot at an officer and that Mr. Salih told the Petitioner they never should have gone to rob the men. He agreed Mr. Kokoye would have tried to impeach Mr. Salih.

The Petitioner testified that he wanted counsel to view the crime scene because the State's argument that the shooter could see the officer's face was impossible. He said Mr. Salih's testimony that the Petitioner was to "take out" the driver and that Mr. Salih was to "take out" the passenger and the State's evidence that his brother and Nechirvan Yahya were in the woods did not make sense logistically. He said that he would have had to squeeze between two cars and that Mr. Salih, the Petitioner's brother, and Mr. Yahya would have had to go around the car. He wanted counsel to investigate these allegations to prove that the Petitioner never attempted or conspired to kill anyone and that instead, it was an attempt to recover money previously taken from his brother.

The Petitioner testified that he was not armed on the night of the incident but that others were. He agreed that he arranged a drug deal with two men, that he intended to take the drugs from the men and sell them to recover the money they took from his brother, and that he was prepared to use force if necessary. He agreed he wanted his defense at the trial to be that he was guilty of a serious crime involving violence but not the crimes with which he was charged. He said that he wanted counsel to present the defense that he did not intend to kill anyone, only rob them, and that he understood this defense meant admitting he lied to the police when he told them he was not at the park. He said that the defense may have had problems but that if it was presented to the jury, it would have helped. He said his proposed defense was better than arguing he was not at the park because telephone records showed he was there.

Upon questioning by the trial court, the Petitioner testified that Mr. Salih testified in great detail at the bond hearing. He said he was surprised when Mr. Salih stated that there was a plan that night and that the Petitioner told him they were going to "take out" the men. He said he knew this information before the trial and had known it for months. When asked what he thought counsel should have done to counteract the testimony, he said counsel should have reviewed the statements Mr. Salih gave to Detective Freeman in which Mr. Salih stated that they went to the park to rob the men. He said Mr. Salih only told the detective the plan was to "take out" the men after repeated questioning. He agreed that counsel cross-examined Mr. Salih about the questioning but said the recordings of the interviews were never introduced. The court explained that the Rules of Evidence made the recordings inadmissible. He said that counsel submitted Mr. Kokoye's and Mr. Nashbir's names to the court before the trial, that the names were given to the jury as possible witnesses, and that counsel was aware of them, although counsel was unaware of what their testimony would be.

Drau Kokoye testified that he and the Petitioner grew up together. He said that he volunteered to testify at the Petitioner's trial but that no one contacted him. He said he came to court during the trial but never spoke with counsel or an investigator before the trial. He said he spoke to the Petitioner's brothers at the trial and told them to inform counsel he was in the courtroom and willing to help. He said he did not know all the parties involved in the conspiracy but knew the Petitioner and Mr. Salih, whom he met through the Petitioner in college.

Mr. Kokoye testified that he learned of the incident when Mr. Salih called his cell phone early that morning from jail needing money for bail. He said Mr. Salih told him that the reason he was in the park was to recover money that was taken from the Petitioner's brother and that nothing went as planned. He said that he had known the Petitioner and Mr. Salih a long time and that they were not the type of people to try to kill someone. He said Mr. Salih never mentioned that the meeting in the park was a "set-up for a murder." He said that Mr. Salih did not use the term "robbery" but that the description of the plan was to recover the money. He did not get the impression from the conversation that the plan was to kill anyone.

On cross-examination, Mr. Kokoye testified that he was present during Mr. Salih and the Petitioner's conversation. He said the Petitioner did not admit being at the park and never said he was with the others trying to recover his brother's money. He stated that the conversation concerned the group going to the park to recover the money and that Mr. Salih was confused because things had not gone as planned. He said the Petitioner was trying to determine what happened by questioning Mr. Salih. He agreed that he was closer to the Petitioner than Mr. Salih because he grew up with the Petitioner but that he would do anything possible to find the truth.

Upon questioning by the trial court, Mr. Kokoye testified that he heard Mr. Salih state in the Petitioner's presence that Mr. Salih was in the park to recover the money. He agreed that the Petitioner adopted Mr. Salih's statements about planning to recover the money, that the Petitioner did not mention killing anyone, and that the Petitioner's failure to respond to Mr. Salih's statements may have acknowledged that he was in the park also.

Karzan Abubakir testified that he received a citation on September 5, 2005, for gambling. Shivan Galnasky testified that he was present during the gambling sting in Paragon Mills Park in September 2005 but never received a citation. Both said the Petitioner was not present in the park on the day of the sting.

Counsel testified that he had been licensed to practice law in Tennessee since 1996 and that the primary focus of his law practice was criminal defense. He said he was retained

by the Petitioner's family to represent the Petitioner at the trial and met with the Petitioner multiple times before the trial.

Counsel testified that he knew about Mr. Kokoye but did not call him as a witness. He said he and the Petitioner's brother's attorney discussed whether to call Mr. Kokoye and determined early in preparation not to call him. He said that he discussed it with the Petitioner before the State rested and that based on the defense chosen and the Petitioner's decision not to testify, the witness's testimony would have been contrary to the defense strategy and included statements against the Petitioner's interests. He did not believe it was good to present proof from a witness without knowing exactly what the testimony would be.

Counsel testified that he had two potential defenses in this case: (1) that the Petitioner was not in the park or (2) that the Petitioner lied to police and committed a serious violent crime but not the ones with which he was charged. He said the Petitioner had to testify for the second defense to have been a possibility. He said that if he had called Mr. Kokoye to testify, Mr. Kokoye would have connected the Petitioner to the event and the park and that he would have been forced to ask the Petitioner to testify.

Counsel testified that he went to the scene and spent several hours in different parking lots trying to determine how things happened based on the pictures. He said he went during the day to investigate, went back at night to view it after dark, and went to the pavilion where the cars were parked. He said he cross-examined Mr. Salih and Mr. Ahmed about where people were that night and tried to impeach them on the impracticality of the locations they described. He said that his brother, who had been a licensed attorney since 1993, handled the bond hearing because he was at a trial, that defense counsel was able to question Mr. Salih during the hearing, and that he received a transcript or a recording of the hearing. He said it would not have been helpful to question Mr. Salih about where the Petitioner stood in the park when the defense theory was that the Petitioner was not present.

On cross-examination, counsel agreed that the evidence from the State's perspective indicated that the Petitioner was at the park. He agreed that the defense presented no evidence. He did not think arguing that the incident was a robbery would be helpful because robbery was a violent offense and it would have been easy for the jury "to make the leap" from robbery to a more serious crime. He agreed that the Petitioner would have served less time for an aggravated robbery conviction than a conspiracy to commit murder conviction. He said the aggravated robbery theory was not presented because the Petitioner did not testify. He also said that because an aggravated robbery theory would show the Petitioner, who was a convicted felon, possessed a gun, counsel was concerned a federal prosecution might be initiated. He said that he had no specific information about the federal government being interested in the case but that he did not want to take the chance. He said it was

common at the time of the offense for the State to dismiss the charges and for the United States Attorney's office to present them in federal court.

Counsel testified that he did not attempt to interview Mr. Galnasky and Mr. Abubakir but that he knew one of them existed. He said he did not investigate the gambling sting because the incident occurred on a different day and did not concern the Petitioner. He said the citation the Petitioner received for gambling was dismissed. He found it odd Officer Spray testified that the gambling citation was a reason the Petitioner would be upset with him because it was a minor infraction and was dismissed. He said he used cross-examination to discredit Officer Spray's testimony. He said that another officer wrote the citation and that Officer Spray was standing with the officer. He said Mr. Salih was not entirely credible because he had "some issues with the law and issues with his testimony." He agreed Mr. Kokoye's testimony would have disputed what was said during Mr. Salih and the Petitioner's conversation.

On redirect examination, counsel testified that he had information with which to impeach Mr. Salih and Mr. Ahmed. He said that if he had called Mr. Kokoye, he could have impeached Mr. Salih but that he would have also established the Petitioner's connection to the conspiracy. He said that if he had presented evidence, the primary evidence would have been the Petitioner's testimony and that the Petitioner would have had to admit that he lied to the police or maintain the story that he was not present and explain why Mr. Kokoye thought the Petitioner was at the park. He thought that if the Petitioner had not been convicted, the State would have requested the federal government to prosecute him.

Upon questioning by the trial court, counsel said that he discussed with the Petitioner whether he would testify, that they reviewed the decision "quite a bit," and that he explained the risks. He said that he did not file the motion for newly discovered evidence but that he discussed the issue in the motion for a new trial.

We note that the post-conviction petition listed several issues and that evidence was presented for many, but not all, of the issues during the post-conviction hearing. The trial court found the Petitioner did not present proof for all the issues in his petition and addressed only the claims for which testimony was presented. We address the two issues regarding counsel that the Petitioner raised in his brief and have discussed only the testimony from the hearing relevant to the two issues.

The Petitioner contended that counsel failed to subpoena four witnesses who could have provided exculpatory evidence at the trial. The trial court found that at the post-conviction hearing, the Petitioner called three witnesses, Drau Kokoye, who was named in the petition, and Karban Abukir and Shavin Galmasy, who were not named in the petition.

The court found that the Petitioner's claims were waived as to three witnesses named in the petition who did not testify at the post-conviction hearing. The court credited counsel's testimony that it was a strategic decision not to call Mr. Kokoye and found that if Mr. Kokoye's testimony had been presented at the trial, it would not have changed the outcome. The court credited counsel's testimony that Mr. Abukir's and Mr. Galmasy's testimony would not have been relevant to the trial because it concerned an unrelated incident on a different day and found that if their testimony had been presented at the trial, it would not have changed the outcome. This appeal followed.

The Petitioner contends that the trial court erred by denying post-conviction relief when he received the ineffective assistance of counsel. He argues that counsel failed to subpoena a material witness, Drau Kokoye, who was available to testify favorably for the defense, and that counsel failed to present a cognizable defense. The State responds that the court properly denied post-conviction relief. We agree with the State.

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2012). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. *Id.* at 457. Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103 (2012).

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the Petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance fell below a reasonable standard is not enough because the petitioner must also show that but for the substandard performance, there is "a reasonable probability that . . . the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The *Strickland* standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. *State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the *Strickland* test. *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). The performance prong requires a petitioner raising a claim of ineffectiveness to show that counsel's representation fell below an objective standard of reasonableness or

"outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability means a "probability sufficient to undermine confidence in the outcome." *Id.*

Regarding the Petitioner's argument that counsel was ineffective for failing to subpoena Drau Kokoye, counsel and the Petitioner's brother's attorney decided during preparation for the trial not to call Mr. Kokoye. Counsel discussed the decision with the Petitioner and told him the witness's testimony would be contrary to the defense strategy. Mr. Kokoye would have connected the Petitioner to the incident and would have forced the Petitioner to testify to maintain a defense. Although Mr. Salih had "some issues with the law and issues with his testimony" and Mr. Kokoye's testimony could have impeached Mr. Salih, Mr. Kokoye would have also established the Petitioner's connection to the conspiracy. The trial court credited counsel's testimony that it was a strategic decision not to call Mr. Kokoye to testify and found that if Mr. Kokoye's testimony had been presented at the trial, it would not have changed the outcome. "Allegations of ineffective assistance of counsel relating to matters of trial strategy or tactics do not provide a basis for post-conviction relief." *Taylor v. State*, 814 S.W.2d 374, 378 (Tenn. Crim. App. 1991). The Petitioner is not entitled to relief on this issue.

Regarding the Petitioner's argument that counsel was ineffective for failing to present a cognizable defense, counsel said the two potential defenses were (1) that the Petitioner was not present in the park or (2) that the Petitioner lied to the police and committed a violent crime, but not attempt to commit murder or conspiracy to commit murder. He decided to argue that the Petitioner was not present and discussed the decision with the Petitioner. Counsel said that if he had presented evidence at the trial, the primary evidence would have been the Petitioner's testimony and that the Petitioner would have had to admit that he lied to the police or maintain the story he told the police, which was that he was not present. Counsel thought the jury could conclude a more serious crime occurred if the Petitioner admitted committing a robbery, a violent crime. He was also concerned a federal prosecution would be initiated if the defense admitted the Petitioner, a convicted felon, used a gun in an aggravated robbery. Counsel offered reasonable explanations for why proof was not presented and why he argued that the Petitioner was not present. The ultimate failure of counsel's chosen strategy did not necessarily constitute the ineffective assistance of counsel. *Id.* The Petitioner is not entitled to relief on the issue.

In consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE