IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs May 6, 2014

## WILLIE HAMPTON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 08-06850   James M. Lammey, Jr., Judge**

**No. W2013-00542-CCA-R3-PC  - Filed May 30, 2014**

The Petitioner, Willie Hampton, appeals the Shelby County Criminal Court's denial of his petition for post-conviction relief from his 2010 conviction for theft of property valued at $10,000 or more but less than $60,000 and his Range III, fifteen-year sentence.  The Petitioner contends that the trial court erred by denying him relief because he received the ineffective assistance of counsel.  We affirm the judgment of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

James E. Thomas, Memphis, Tennessee, for the appellant, Willie Hampton.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Senior Counsel; Amy P. Weirich, District Attorney General; and Jessica Banti, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

This case arises from the Petitioner's deceiving Margaret Elbert Biggs into giving him more than $10,000 and a truck.  The Petitioner appealed his conviction, and this court affirmed the conviction and summarized the facts of the case as follows:

In April or May of 2008, the Defendant-Appellant visited Biggs at her new business, Biggs General Contracting, a scrap metal company in Millington, Tennessee.  Biggs was surprised to see the Defendant-Appellant because she had not seen him since she had closed her video stores, some eight years earlier.  She stated,

He was just so happy to see me and of course he was joking around, kept us laughing and told me that he worked for – was the manager of a big tire company in West Memphis, because I had invited him on into the office and I think two of my employees were in there and he was telling me that they were doing a big inventory on tires. They was having their big inventory and that he could get me some tires at a really good price.

Biggs said the Defendant-Appellant asked her how many tires she needed, and she jokingly responded "thirty or forty." She testified that she did not intend to buy any tires from the Defendant-Appellant. However, a few days later, the Defendant-Appellant approached her again about the tires and said he needed "cash money." At that point, Biggs told him she would "have to pay by check, get an invoice. [She] asked him if he was stealing those tires." The Defendant-Appellant was in tears and told her "that he was going to have to do something, because he had a lot of bills that he was behind on."

Some days later, Biggs received a telephone call from a "Sergeant Hill", who said he was with law enforcement. "Sergeant Hill" told Biggs that she was going to be arrested because of her involvement with some "tires." She responded that she did not buy any tires, and was then told that it was on "tape where [she] had told him [she would] take so many." She replied, "if you was taping it then you'll know what I told him, that I wouldn't buy them." She testified that "Sergeant Hill" called again and "asked for her help in catching them. That they had the tires at some place in Memphis and he needed [her] to call [the Defendant-Appellant] and tell him that [she] would take the tires."

She did not recognize the voice of "Sergeant Hill" as that of the Defendant-Appellant. She called the Defendant-Appellant and told him she would take the tires. The Defendant-Appellant then told her that he needed $2,500 cash. The Defendant-Appellant explained that another individual had the tires in storage and he could not get the tires out of storage without paying him a $2,500 storage fee. Biggs called "Sergeant Hill" back, and "Sergeant Hill" advised her to give the Defendant-Appellant the $2,500. "Sergeant Hill" told Biggs that she would be reimbursed for the money. Biggs later gave the Defendant-Appellant $2,500, in cash.

Biggs "heard a lot of sirens going down Thomas Street" and assumed the Defendant-Appellant and "that guy that was in cahoots with him" were arrested. Biggs said, about a week later, the Defendant-Appellant called her "from jail" and "put on a pitiful story and wanted [her] to loan him $1,500. . . . And his wife, or somebody, came by the office and picked up the $1,500." Biggs explained that she felt "bad" because the Defendant-Appellant was a customer of her video store and she helped to put him in jail.

Biggs testified that she later gave the Defendant-Appellant an additional $7500.00. She explained

> Sergeant Hill started calling me and they was going to arrest my husband, shut our business down because the Feds had been brought in on it and were coming out of Arkansas, out of West Memphis, Arkansas, into Tennessee. It was called trafficking, or something. I can't remember what Sergeant Hill told me. And he told me how sorry he felt for [the Defendant-Appellant] and he said that he was going to lose everything that he had and that he needed help on paying his bills and he told me that I should give him $15,000.00. And I told him that I couldn't give him $15,000.00. And I ended up giving $7500.00, because I just wanted it over. My husband is 70-something years old and he's a good man and I did not want him to know that I was so dumb to even tell him that I would buy tires and then tell him that I was only kidding with him.

Biggs thought it was "over", but she said "[t]hey kept on until I gave them my old blue pickup truck." "Sergeant Hill" called her again and told her that they "felt for [the Defendant-Appellant]" and they found him a job delivering papers. She was told that he could not have the job because his vehicle had been confiscated. Consequently, Biggs said she gave the Defendant-Appellant her Dodge Dakota pickup truck, which was valued at between $2,500 and $3,000. Biggs never received any money from "Sergeant Hill" or the Defendant-Appellant. She also never received her pickup truck.

Six months after Biggs's last contact with the Defendant-Appellant, Leonard Biggs, Biggs's husband, received a phone call regarding an investigation of stolen tires. He testified that he became aware of his wife's giving the Defendant-Appellant money in July of 2008. He said:

I got a phone call early one morning, this guy identified himself as a police officer, who told me that my wife was buying stolen property, or something to that effect and that he was going to lock her up, or something, if we didn't give him this such amount of money and this and that. And I told him, okay. And so, it just kind of rung a little bell when he done that, because I knew that I didn't buy stolen property. I have a scrap yard here on Thomas and I knew that wasn't right.

The caller identified himself as "Sergeant Hill" with the Memphis Police Department. Immediately following the call, Mr. Biggs went to the organized crime unit with the Memphis Police Department and they began to investigate the case.

Mary Dailey, the victim's sister, testified that she was present with the victim each time the victim gave the Defendant-Appellant money. Dailey was with her sister when she gave the Defendant-Appellant $7,500, in May of 2008. She said the Defendant-Appellant was crying and "had a lot of problems." Dailey said that she was also with her sister when she gave the Defendant-Appellant the title to her pickup truck. Dailey was also present when a female came to the victim's office and picked up $1,500 for the Defendant-Appellant.

Mike Shearin, of the Memphis Police Department's Organized Crime Unit ("O.C.U."), testified that April through July of 2008, the duration of the instant offense, there was no "Sergeant Hill" employed in the O.C.U. He also confirmed that the Defendant-Appellant was not working with the O.C.U. during that time. He said that O.C.U. does not ask public citizens to donate money to assist in investigations or to make donations to assist defendants to be released on bond.

Lieutenant Dale Hensley of the Memphis Police Department testified that he investigated the instant case. He retrieved Mr. Biggs's telephone, obtained the phone number of the person who called him regarding the stolen tires, and traced it to the Defendant-Appellant and his wife. The Defendant-Appellant was later given his *Miranda* rights, which he waived, and then provided an oral statement. Lieutenant Hensley recalled:

-4-

[H]e thought that we wanted to question him about Ms. Margaret Biggs and his sister, trying to say that he was doing something. We told him that it was about a woman named Margaret, but we didn't know anything about his sister. But, we asked him if he had called Mr. Biggs that morning and he stated that he had. And when I asked him why he pretended to be a police officer, he denied doing that. And I also asked him about the monies that he had received from Ms. Biggs and he denied ever receiving any money from Ms. Biggs.

And, I asked him about the truck and why he had had that truck from her and he said he [sic] gave it to her [sic] for transportation. And I asked him why he didn't get it signed into his own name and he said, he put it in his wife's name, because he couldn't have anything in his name, because of being on probation.

. . . .

He did, however state, that he had all of his conversations with Ms. Biggs on tape and that if it came to the point that it had to come to trial, he would produce the tapes. So I repeatedly tried to get him to get me the tapes, or at least let me listen to them and told him that if the tapes proved that he did nothing wrong, that we wouldn't even put him in jail[.]

The Defendant-Appellant never provided the tapes to Lieutenant Hensley. Lieutenant Hensley confirmed that (1) there was no "Sergeant Hill" employed with the Memphis Police Department O.C.U., (2) there was no evidence that Ms. Biggs was investigated for buying stolen tires, and (3) there was no evidence that the Defendant-Appellant was arrested for involvement in a stolen tire ring, as Ms. Biggs was led to believe.

*State v. Willie Hampton*, No. W2010-01603-CCA-R3-CD, slip op. at 1-5 (Tenn. Crim. App. Aug. 17, 2011).

The Petitioner filed a petition for post-conviction relief contending that he received the ineffective assistance of counsel. He alleged that counsel failed to meet with him adequately, advise him adequately, investigate his case adequately, file pretrial motions,

make appropriate objections at the trial, present witnesses at the trial, and raise all appropriate issues in the motion for new trial and on appeal.

At the post-conviction hearing, the trial transcript was received as an exhibit. Counsel testified that he had practiced law for twenty-five years and had worked for the public defender's office for seventeen or eighteen years. He represented the Petitioner in the theft case after the preliminary hearing. He said that before the trial, he reviewed the Petitioner's statement to the police but that he did not file a motion to suppress. He said the defense at the trial was that the Petitioner did not commit a crime because the victim voluntarily gave him the money and truck. He agreed the facts were not disputed at the trial, only that the facts did not constitute a crime.

Counsel testified that he did not recall the details of the Petitioner's statement. He recalled talking to the Petitioner about potential witnesses but said he did not want to call witnesses at the trial because he did not think the Petitioner's conduct was illegal. He said, too, that the witnesses the Petitioner proposed were irrelevant to the case and would not have helped the defense. He did not recall the Petitioner's wanting to present his wife as a witness but did not dispute it. He did not issue subpoenas. He recalled the trial judge's telling the Petitioner that counsel would subpoena any witness the Petitioner requested and said "the term 'witness' might have been us[ed] loosely."

Counsel reviewed the Petitioner's statement to the police. He agreed that the Petitioner denied scheming, stealing, and taking money from the victim in the statement, although the defense presented at the trial was that the Petitioner received money from the victim but committed no crime. He did not recall why he did not file a motion to suppress the Petitioner's statement. He said, though, the defense presented at the trial was the only defense available based on his conversations with the Petitioner.

On cross-examination, counsel testified that the State's proof was that the Petitioner deceived the victim into believing the Petitioner worked for the Memphis Police Department and into believing she was providing money to help "bring down a stolen tire scheme." He agreed that the Petitioner was questioned by the police, that the officers read him his *Miranda* rights, and that the Petitioner waived his rights. He said he discussed with the Petitioner whether his statement was involuntary and coerced and concluded no grounds existed to file a motion to suppress.

Counsel testified that the chosen defense was that the victim willingly gave the Petitioner money and a truck without deception. He said that regardless of the Petitioner's police statement, consent was the only defense he could have presented based on the Petitioner's statements to counsel.

On redirect examination, counsel testified that he spoke to the attorney who represented the Petitioner in the General Sessions Court. Regarding his failure to file a motion to suppress, he conceded he did not recall if grounds existed to file a motion but said he talked to the Petitioner about possibly filing a motion, whether his statement was coerced, whether the police yelled or screamed at him, and whether the police made promises in exchange for a statement. He did not recall any grounds upon which a motion to suppress could have been filed.

Upon examination by the trial court, counsel testified that the Petitioner was "earmarked for special prosecution" because of his previous theft-related convictions. He agreed the Petitioner's credibility would have been a factor for the trial court to consider in a motion to suppress. He said he would have filed a motion to suppress if the Petitioner had said his statement was coerced. He agreed that coercion was the only basis that could have existed to support a motion to suppress. He denied the Petitioner claimed his statement was coerced. Counsel stated that the State offered the Petitioner an eight-year sentence as a Range II offender but that the Petitioner rejected it and received a fifteen-year sentence as a Range III offender after the trial.

The trial court found that the only evidence presented at the hearing related to counsel's failure to file a motion to suppress and that the Petitioner failed to present evidence that grounds existed to support filing a motion. The court stated that the Petitioner had presented nothing but speculation and found that the record did not contain proof that the Petitioner's statement was involuntary or coerced. The court stated that it would have been improper and unethical for counsel to have filed a motion without merit. The court found that a motion to suppress would not have been successful unless counsel had a reason to request suppression of the statement.

The trial court noted that the Petitioner was offered eight years as a Range II offender but rejected it and received a fifteen-year sentence as a Range III offender after the trial. The court found that counsel presented the best defense available given the Petitioner's claiming the victim gave him the money and the truck willingly, although the Petitioner told the police he did not receive money from the victim. The court refused to second guess counsel's tactical decisions. The court found that counsel did not provide deficient performance and that the Petitioner failed to establish prejudice. This appeal followed.

The Petitioner contends that the trial court erred by denying post-conviction relief. He argues he received the ineffective assistance of counsel because counsel failed to file a motion to suppress and failed to present a sound, informed trial strategy. He states that counsel presented a defense inconsistent with his pretrial statement. The State responds that the court did not err by summarily dismissing the petition. We agree with the State.

-7-

The burden in a post-conviction proceeding is on the petitioner to prove his grounds for relief by clear and convincing evidence. T.C.A. § 40-30-110(f) (2012). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. *Id.* at 457. Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103 (2012).

Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the Petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). In other words, a showing that counsel's performance fell below a reasonable standard is not enough because the petitioner must also show that but for the substandard performance, there is "a reasonable probability that . . . the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The *Strickland* standard has been applied to the right to counsel under article I, section 9 of the Tennessee Constitution. *State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the *Strickland* test. *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). The performance prong requires a petitioner raising a claim of ineffectiveness to show that counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability means a "probability sufficient to undermine confidence in the outcome." *Id.*

Regarding counsel's failure to file a motion to suppress, the record reflects that counsel and the Petitioner discussed his statement to the police and that counsel concluded based on their conversation that no grounds existed for him to file a motion to suppress. Counsel testified that the police officers who interviewed the Petitioner advised him of his *Miranda* rights and that the Petitioner waived those rights. Although counsel did not recall the specific circumstances surrounding the statement, counsel stated that he would have filed a motion to suppress had the Petitioner provided information suggesting the statement was involuntary. We note that although the Petitioner contends counsel should have filed a motion to suppress, he presented no evidence at the post-conviction hearing showing that a

basis existed for suppressing his pretrial statement or that a motion might have been successful.

Regarding counsel's failure to present a sound, informed trial strategy, the evidence shows that counsel considered the type of defense to present at the trial. Although counsel knew the Petitioner denied in his police interview receiving the money and the truck from the victim, the Petitioner told counsel that the victim gave him the money and the truck willingly without deception or false pretenses. Based on his conversations with the Petitioner, counsel concluded that the effective consent of the victim was the only viable defense. We note that counsel's testimony was uncontradicted at the hearing. We conclude that the trial court did not err by denying post-conviction relief.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE